ORAL ARGUMENT NOT REQUESTED
No. 26-1326

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,
Defendant-Appellee

COMMON CAUSE; KYLE GIDDINGS; ANNE KEKE; COLORADO ALLIANCE FOR RETIRED AMERICANS; BRITTON DEFORD,
Defendants Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
The Honorable Judge Philip A. Brimmer
D.C. No. 1:25-cv-3967-PAB-TPO

# BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of cover page)*

*(continuation of cover page)*

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
J. KATIE NEFF
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 333-0019

## STATEMENT OF RELATED CASES

This is the first and only appeal in this case. This appeal raises substantially similar issues to those in *United States v. Oliver*, No. 26-2126 (10th Cir.) (Opening Brief filed August 17, 2026); *United States v. Benson*, 179 F.4th 470, *reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026); and pending appeals in the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and D.C. Circuits. The United States respectfully requests that this Court coordinate resolution of this appeal with the resolution of *Oliver*.

# TABLE OF CONTENTS

**PAGE**


STATEMENT OF RELATED CASES

GLOSSARY

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 2

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 3

A. Statutory Overview ........ 3

B. The Department of Justice requests the SVRL as part of its investigation into the NVRA complaint. ........ 6

C. Procedural History ........ 8

SUMMARY OF ARGUMENT ........ 10

STANDARD OF REVIEW ........ 12

ARGUMENT

I. Colorado's SVRL is a record or paper that Title III requires the State to retain and preserve and to produce upon the Attorney General's demand. ........ 13

A. The SVRL is a record that came into the Secretary's possession. ........ 15

**TABLE OF CONTENTS (continued):** **PAGE**


B. There is no conflict between Title III and the list maintenance requirements of the NVRA and HAVA. .......... 24

C. The Secretary must produce an electronic copy of the SVRL. .......... 29

II. The DOJ's demand for an electronic, unredacted copy of Colorado's SVRL satisfied Title III's requirements. .......... 29

A. The DOJ's demand amply satisfied the CRA's threshold basis and purpose requirement. .......... 30

1. Courts play a limited role in assessing the Attorney General's demand under Title III. .......... 30

2. The DOJ's assertion that it was investigating Colorado's possible non-compliance with the NVRA and HAVA sufficiently stated a basis and purpose for its demand. .......... 38

B. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under 52 U.S.C. 20703. .......... 49

III. Neither Title III nor privacy laws permit Secretary Griswold to redact requested information. .......... 50

A. Title III does not permit the Secretary to choose to redact requested information. .......... 51

B. Federal law preempts any contrary Colorado privacy law. .......... 54

**TABLE OF CONTENTS (continued): PAGE**

C. The DOJ's demand complied with the Privacy Act. .......... 56

D. The Attorney General's demand complied with the E-Government Act. .......... 59

E. The Driver's Privacy Protection Act does not allow the Secretary to deny the DOJ list maintenance data. .......... 63

CONCLUSION .......... 64

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

ATTACHMENT 1 – Order Granting Defendants' Motion to Dismiss (ECF 102)

ATTACHMENT 2 – Final Judgment (ECF 103)

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*, 285 F.2d 430 (5th Cir. 1961) ........ 30

*American Oversight v. United States Dep't of Just.*, 45 F.4th 579 (2d Cir. 2022) ........ 59

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ........ 55

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 12

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) ........ 46, 54

*Bryan v. United States*, 524 U.S. 184 (1998) ........ 27

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) ........ 55

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) ........ 32, 36

*Dean v. United States*, 556 U.S. 568 (2009) ........ 44

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024) ........ 48

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat.1520 ........ 33, 38

*Doe v. Chao*, 540 U.S. 614 (2004) ........ 57

**CASES (continued): PAGE**

*Electronic Privacy Info. Ctr. (EPIC) v. United States Dep't of Com.*, 356 F. Supp. 3d 85 (D.D.C.), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019) .......... 61-62

*Ex Parte Siebold*, 100 U.S. 371 (1879) .......... 55-56

*Fischer v. United States*, 603 U.S. 480 (2024) .......... 26

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), *superseded by statute on other grounds*, Family Smoking Prevention and Tobacco Control Act of 2009, 123 Stat. 1776 .......... 47

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) .......... 16

*Foster v. Love*, 522 U.S. 67 (1997) .......... 55

*Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288 (10th Cir. 2025) .......... 12

*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916 (11th Cir. 2023) .......... 16

*Glacier Nw., Inc. v. International Bhd. of Teamsters 61 Loc. Union No. 174*, 598 U.S. 771 (2023) .......... 56

*Gray v. Main*, 309 F. Supp. 207 (M.D. Ala. 1968) .......... 52

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) .......... 13, 44

*High Desert Relief, Inc. v. United States*, 917 F.3d 1170 (10th Cir. 2019) .......... 49-50

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .......... 35-36

**CASES (continued):** **PAGE**

*In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194 (10th Cir. 2015) .................. 12

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) .................................... 31

*Kennedy v. Lewis*, 325 F.2d 210 (5th Cir. 1963) (per curiam) ............... 20

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ...................8, 13, 31-35, 41, 50, 56, 64

*Kennedy v. Owen*, 321 F.2d 116 (5th Cir. 1963) (per curiam) ............... 20

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ............ 14

*McIntyre v. Morgan*, 624 F. Supp. 658 (S.D. Ind. 1985) ........................ 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ................................................................. 13, 44

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
587 U.S. 601 (2019) ....................................................................... 49

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) .....................................................52-53

*Public Int. Legal Found., Inc. v. Bellows*,
92 F. 4th 36 (1st Cir. 2024) ......................................................52-53

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) ..........................46-47

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ....................................................................... 26

*Reynolds v. Sims*, 377 U.S. 533 (1964) ..............................................46-47

*Reno v. Condon*, 528 U.S. 141 (2000) .................................................... 63

**CASES (continued):** **PAGE**

*Russello v. United States*, 464 U.S. 16 (1983) .......................................... 45

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) .............................. 3, 5

*Taniguchi v. Kan Pac. Saipan, Ltd.,* 566 U.S. 560 (2012) ....................... 62

*United States v. Balanced Fin. Mgmt.*,
769 F.2d 1440 (10th Cir. 1985) ........................................................ 50

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 6th Cir. 2026) ................ 15, 47, 49
*aff'd*, 179 F.4th 470 ......................................15, 18, 20-23, 26, 49-41
*reh'g en banc denied*, 187 F.4th 462
(6th Cir. 2026)........................15, 18, 23-25, 28, 30, 34, 37, 39, 44-45

*United States v. Duke*, 332 F.2d 759 (5th Cir. 1964) ..........................51-52

*United States v. Fausto*, 484 U.S. 439 (1988) .......................................... 47

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ......................... 32, 35

*United States v. McAnlis*, 721 F.2d 334 (11th Cir. 1983) ........................ 51

*United States v. Mississippi*, 229 F. Supp. 925
(S.D. Miss. 1964), *rev'd*, 380 U.S. 128 (1965) ........................... 13, 52

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)...................... 36, 38

*United States v. Powell*, 379 U.S. 48 (1964) .......................................36-38

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ............................................................... 19, 21

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025)........................................... 25, 27, 52

**CASES (continued):** **PAGE**

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) .......... 1

**CONSTITUTION:**

U.S. Const. Art. I, § 4, Cl. 1 .......... 55

U.S. Const. Art. VI, Cl. 2 .......... 55

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 10101 .......... 44-45
52 U.S.C. 20701 .......... 1, 3, 9, 17, 24
52 U.S.C. 20701 *et seq*. .......... 1, 3
52 U.S.C. 20701-20706 .......... 37, 44
52 U.S.C. 20702 .......... 24, 26-27, 56
52 U.S.C. 20703 .......... 4, 29-32, 34, 41-42, 44, 49
52 U.S.C. 20704 .......... 4, 52-53, 55-56
52 U.S.C. 20705 .......... 4-5, 30-31
Pub. L. No. 86-449, § 601, 74 Stat. 90 .......... 44

Civil Rights Cold Case Records Collection Act of 2018
Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) .......... 17

Driver's Privacy Protection Act of 1994 (DPPA)
18 U.S.C. 2721 *et seq*. .......... 63
18 U.S.C. 2721(a) .......... 63
18 U.S.C. 2721(b)(1) .......... 63
18 U.S.C. 2721(c) .......... 63
18 U.S.C. 2725(1) .......... 63
18 U.S.C. 2725(3)-(4) .......... 63

E-Government Act of 2002
§ 201 .......... 60-61
§ 208(b)(1)(A)(ii) .......... 61-63
§ 208(b)(1)(A)(ii) .......... 60-61

**STATUTES (continued):** **PAGE**

§ 208(b)(1)(B)(i) ....60-61
44 U.S.C. 3501 ....60
44 U.S.C. 3502 ....60-61
44 U.S.C. 3502(3)(A)(i) ....60-62
44 U.S.C. 3502(3)(B) ....61-62
44 U.S.C. 3502(10) ....60
44 U.S.C. 3518(c)(1) ....61
44 U.S.C. 3518(c)(1)(B) ....62
44 U.S.C. 3601 ....60-61
Pub. L. No. 107-347, 116 Stat. 2899 ....59-60

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 20901 *et seq.* ....1
52 U.S.C. 21083(a)(1)(A) ....5, 29, 45, 62
52 U.S.C. 21083(a)(1)(A)(i) ....14, 27
52 U.S.C. 21083(a)(1)(A)(vi) ....28
52 U.S.C. 21083(a)(1)(A)(viii) ....27
52 U.S.C. 21083(a)(2) ....54
52 U.S.C. 21083(a)(2)(A) ....5, 43
52 U.S.C. 21083(a)(5)(A)(i)-(ii) ....6
52 U.S.C. 21083(a)(5)(A)(iii) ....6
52 U.S.C. 21111 ....57
Pub. L. No. 107-252, 116 Stat. 1666 ....46

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20501 *et seq.* ....1
52 U.S.C. 20501(a)(3) ....45-46, 54
52 U.S.C. 20501(b)(3) ....5
52 U.S.C. 20507 ....40
52 U.S.C. 20507(a)(3) ....54
52 U.S.C. 20507(a)(4) ....43
52 U.S.C. 20507(i)(1) ....5, 53
52 U.S.C. 20510(a) ....48

**STATUTES (continued):** **PAGE**

President John F. Kennedy Assassination
Records Collection Act of 1992
Pub. L. No. 102-526, § 3(2), 106 Stat. 3444 .................................... 17

Privacy Act of 1974
5 U.S.C. 552a(e)(4) ............................................................ 57-58
5 U.S.C. 552a(e)(4)(B) ............................................................ 58
5 U.S.C. 552a(e)(7) ............................................................ 57
Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896 .................................. 57

10 U.S.C. 130c(d)(2)(C) ............................................................ 19

13 U.S.C. 214 ............................................................ 19

26 U.S.C. 7604(a) (1954 ed.) ............................................................ 33

26 U.S.C. 7605(b) (1954 ed.) ............................................................ 37

28 U.S.C. 1331 ............................................................ 2

28 U.S.C. 1345 ............................................................ 2

28 U.S.C. 1291 ............................................................ 2

30 U.S.C. 1732(b) ............................................................ 19

31 U.S.C. 5314(a) ............................................................ 60

44 U.S.C. 2107 ............................................................ 17

44 U.S.C. 3572(f) ............................................................ 19

Colo. Rev. Stat. § 1-2-302(8) ............................................................ 55

**LEGISLATIVE HISTORY:** **PAGE**

*Civil Rights—1959: Hearings Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong., 1st Sess. (1959) .......... 50

H.R. Rep. No. 956, 86th Cong., 2d Sess. (1959) .......... 20

**REGULATIONS:**

28 C.F.R. 0.50(a) .......... 58

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 58

70 Fed. Reg. 43,904 (July 29, 2005) .......... 58

82 Fed. Reg. 24,147 (May 25, 2017) .......... 58

**RULES:**

Fed. R. App. P. 2 .......... 64-65

Fed. R. App. P. 41(b) .......... 64

Fed. R. App. P. 40(d)(1) .......... 65

**MISCELLANEOUS:**

Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (2026), https://www.justice.gov/olc/media/1440346/dl .......... 17

*Merriam-Webster's Collegiate Dictionary* (10th ed. 2002) .......... 62

Report of the United States Commission on Civil Rights (1959) https://www.usccr.gov/files/historical/1959/59-001-U.pdf .......... 21-22

**MISCELLANEOUS (continued): PAGE**

*The American College Dictionary*
(1959 ed.) .......... 16, 25

*The American Heritage College Dictionary*
(4th ed. 2002) .......... 62

*The New Shorter Oxford English Dictionary*
(4th ed. 1993) .......... 16

U.S. Dep't of Just., Civil Rights Division, Voting Section,
https://www.justice.gov/crt/voting-section
(last visited Oct. 5, 2026) .......... 58

U.S. Dep't of Just., Justice Manual § 9-11.151 (2020),
https://www.justice.gov/jm/jm-9-11000-grand-jury# .......... 59

U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA*,
https://www.eac.gov/sites/default/files/HelpAmerica
VoteDay/HAVA_1-Pager_10-27-22_508.pdf
(last visited Oct. 5, 2026) .......... 46

*Webster's New World Dictionary of the American Language*
(8th coll. ed. 1960) .......... 16

*Webster's Third New International Dictionary*
(1966 ed. unabridg.) .......... 17, 25

## GLOSSARY

| | |
|---|---|
| CRA | Civil Rights Act of 1960 |
| DHS | U.S. Department of Homeland Security |
| DMV | Department of Motor Vehicles |
| DOJ | U.S. Department of Justice |
| DPPA | Drivers' Privacy Protection Act |
| EAC | U.S. Election Assistance Commission |
| EAVS | Election Administration and Voting Survey |
| HAVA | Help America Vote Act of 2002 |
| IRC | Internal Revenue Code |
| IRS | Internal Revenue Service |
| MOU | Memorandum of Understanding |
| NVRA | National Voter Registration Act of 1993 |
| PIA | Privacy Impact Assessment |
| PII | Personally Identifiable Information |
| SORN | System-of-Records Notice |
| SVRL | Statewide Voter Registration List |
| VRL | Voter Registration List |

## INTRODUCTION

Suffrage, unimpaired and undiluted, is a fundamental civil right that is both foundational to our form of government and paramount as the "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). In defense of that right, the United States brought this suit against Colorado Secretary of State Jena Griswold (the Secretary) and her office to enforce its demand for records under Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq*. Specifically, the United States alleged that the Secretary violated Title III by refusing the Attorney General's demand for Colorado's statewide voter registration list (SVRL) necessary to confirm Colorado's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq*. and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq*.

The district court granted the Secretary's and the intervenors' (collectively, defendants) Motions to Dismiss and denied the United States' Motion to Compel, finding that (1) Colorado's unredacted, electronic SVRL was not subject to the preservation and disclosure provisions of the CRA, and (2) the Attorney General failed to state an adequate basis and purpose for the demand.

The district court erred. The SVRL is a "record" under Title III that "c[a]me into [Secretary Griswold's] possession," 52 U.S.C. 20701, and the Attorney General provided a sufficient basis and purpose for the request. Accordingly, this Court should reverse the district court's judgment and remand with instructions for the district court to order the Secretary to produce the requested SVRL.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331 and 1345. That court entered a final order granting defendants' Motions to Dismiss and denying the United States' Motion to Compel on August 3, 2026 (JA Vol.2 at 362)[1] and entered final judgment the next day (JA Vol.2 at 376). The United States filed a timely Notice of Appeal. JA Vol.2 at 378. This Court has jurisdiction under 28 U.S.C. 1291.

[1] "JA Vol.__ at __" refers to page numbers in the Joint Appendix filed with this brief. "Doc. __" refers to documents filed in the district court, No. 1:25cv3967 (D.Colo.).

## STATEMENT OF THE ISSUES

1. Whether Colorado's unredacted, electronic SVRL is a record or paper that Title III of the CRA requires the State to retain and preserve and to produce upon the Attorney General's written demand.

2. Whether the Department of Justice (DOJ or the Department) adequately stated the basis and purpose of its demand for an electronic, unredacted copy of Colorado's SVRL under Title III.

3. Whether federal or state privacy laws prevent the DOJ from demanding an electronic, unredacted copy of Colorado's SVRL.

## STATEMENT OF THE CASE

### A. Statutory Overview

Congress enacted Title III as part of the Civil Rights Act of 1960 (CRA). The Act's purpose was to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). To that end, Title III "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Title III requires state election officers to preserve certain documents and produce them to the Attorney General upon his demand.

Section 301 requires that "[e]very officer of election . . . retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. And the key provision at issue here, Section 303, authorizes the Attorney General or his representative to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying." 52 U.S.C. 20703. Such demand "shall contain a statement of the basis and the purpose therefor." *Ibid.*

The Attorney General and his representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52 U.S.C. 20704. Should it be necessary to facilitate disclosure, the Attorney General may seek the aid of a district court: "The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate

process to compel the production of such record or paper." 52 U.S.C. 20705.

Although Congress enacted the CRA, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress since has enacted additional laws that affect the "records and papers" that are subject to disclosure. 52 U.S.C. 20701. Relevant here are the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA), which help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3).

The NVRA's requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B). HAVA requires state election officials to implement a centralized computerized SVRL, and to engage in reasonable efforts to maintain that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration

"unless the application includes" particular identifiers—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

### B. The DOJ requests the SVRL as part of its investigation into the NVRA complaint.

On May 12, 2025, the DOJ sent a letter (May 12 letter) to the Secretary informing her that the Department had "received a complaint alleging noncompliance by [the Secretary's] office with the duties" imposed by the NVRA. JA Vol.1 at 39. "To assist [the DOJ's] efforts in evaluating the complaint," the DOJ requested "[a]ll records, as outlined in 52 U.S.C. § 20701." *Ibid.* The letter further requested statutes, regulations, written guidance, internal policies, or database user manuals set forth by Colorado to implement the requirements of Section 20701. *Ibid.*

On May 27, 2025, Secretary Griswold produced records that she claimed were "responsive to [the DOJ's] request." JA Vol.1 at 82. Yet, she did not produce "all records" required under Section 20701. Instead, Griswold produced a version of the SVRL records stripped of critical identifying information for each voter, including the last four digits of the voter's social security number, driver's license number, and full date of birth. JA Vol.1 at 82; JA Vol.1 at 119, ¶¶ 11, 14. The Secretary explained to the DOJ that the production was "generated from SCORE," Colorado's SVRL database. JA Vol.1 at 82. The produced SVRL was also purged of entire voter files of an unknown number of registered voters who had requested removal from the public list. JA Vol.1 at 119, ¶¶ 12, 14.

On December 1, 2025, the DOJ sent an email (December 1 email) to the Secretary that attached the May 12 letter and stated that the email was "a follow up from original correspondence that began in May (see attached letter)." JA Vol.1 at 42 (parenthetical in original). The email explained that "[t]he United States is prepared at this early stage to enter into a Memorandum of Understanding (MOU) with the State of Colorado regarding the sharing of the nonpublic, unredacted voter registration list." *Ibid.* The email also attached a proposed MOU listed "[t]he

authorities by which this information is requested," including the NVRA, HAVA, and the "Attorney General['s] authority to request records pursuant to Title III of the [CRA]." JA Vol.1 at 104.

The Secretary refused the DOJ's demand. JA Vol.1 at 44.

### C. Procedural History

On December 11, 2025, the United States sued Secretary Griswold, asserting a single claim under Title III. JA Vol.1 at 20-21. The United States alleged that the Secretary's refusal to provide an electronic, unredacted copy of its SVRL violated Section 303 of the CRA. *Ibid.* The United States also filed a Motion to Compel Production of the SVRL. JA Vol.1 at 23. The DOJ explained that Title III "creat[es] a 'special statutory proceeding'" under which Secretary Griswold must produce the voter-registration records demanded by the Attorney General. JA Vol.1 at 34 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)).

Common Cause, Kyle Giddings, Anne Keke (Common Cause) and Colorado Alliance for Retired Americans, Britton DeFord (Colorado Alliance) intervened as defendants. Docs. 10, 17.

Defendants each moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). JA Vol.I at 121-135; JA Vol.2 at 282-315. They made

several arguments in the respective dismissal motions: (1) the United States failed to state a valid "basis" and "purpose" in its demand (JA Vol.1 at 131-134; JA Vol.2 at 287-292; JA Vol.2 at 305-310); (2) Title III does not require production of the full, unredacted SVRL (JA Vol.1 at 134-135); and (3) state and federal privacy laws prohibit its disclosure (JA Vol.2 at 313).

On August 3, 2026, the district court granted the Motions to Dismiss, denied the Motion to Compel, and dismissed the Complaint with prejudice. JA Vol.2 at 362. First, the court found that the full SVRL was not a record subject to the CRA because the Secretary did not "come into [] possession" of the record because the record was created into a digital database created by the Secretary's office. JA Vol.2 at 372-374 (quoting 52 U.S.C. 20701 (alteration omitted)). The court believed that a different interpretation would bring the CRA into conflict with the list-maintenance requirements in the NVRA and HAVA. JA Vol.2 at 373.

Second, the court rejected the United States' argument that Title III creates a special statutory proceeding that overcomes the ordinary operation of the Federal Rules of Civil Procedure. JA Vol.2 at 367-369. Applying Rule 12(b)(6), the court found that the Attorney General's

demand failed to state a sufficient basis and purpose as required by the CRA. JA Vol.2 at 369-371. The court reasoned that the DOJ's May 12 letter did not demand a "nonpublic, unredacted voter registration list." JA Vol.2 at 370. The court further found that the December 1 email contained a request for the unredacted, electronic SVRL, but failed to state the basis and purpose for the request. *Ibid.* The court found that the Attorney General could not incorporate in its December 1 email the basis and purpose articulated in the May 12 letter. JA Vol.2 at 370-371.

## SUMMARY OF ARGUMENT

1. The district court erred in dismissing the DOJ's Title III claim on the grounds that the SVRL is not a record or paper subject to Title III's preservation and demand requirements. The CRA's text does not exclude state-generated documents. At most, the distinction between records "com[ing] into [one's] possession" and being "in [one's] possession," is a temporal one—not a distinction between obtaining records from an outside source and through self-generation. Moreover, there is no conflict between the CRA and the list maintenance requirements of the HAVA. Regardless, even under the strained interpretation embraced by the district court, the Secretary came into possession of the SVRL when her

staff prepared the SVRL and provided it to her. Under any interpretation, the SVRL is a voting record under the CRA. Nothing in Title III permits a State to refuse to provide an electronic copy of the SVRL.

2. The district court erred in dismissing the United States' Title III claim on the ground that it failed to state an adequate basis and purpose. Title III creates a special statutory proceeding under which district courts lack the authority to second-guess the United States' asserted basis and purpose for its demand. In any case, the May 12 letter explained that the demand was made pursuant to Title III for the purpose of investigating a complaint alleging Colorado's noncompliance with the NVRA. The December 1 email further explained that the DOJ needed to review the unredacted, electronic SVRL to properly investigate Colorado's compliance with federal list-maintenance requirements, including those specified in the NVRA and HAVA. JA Vol.1 at 42; JA Vol. 1 at 103-104. The United States was not required to allege specific facts to explain why it believed an investigation into the NVRA or HAVA compliance was necessary. The United States satisfied its obligations under Title III.

3. Privacy concerns do not support dismissal. Nothing in Title III permits a state to redact the records demanded by the Attorney General. Accordingly, the DOJ is entitled to reproduction and copying of Colorado's unredacted, electronic SVRL to investigate the NVRA complaint and ensure compliance with federal election laws. No privacy law dictates a different result.

## STANDARD OF REVIEW

This Court reviews orders granting motions to dismiss for failure to state a claim—and the legal questions those motions raise—de novo. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025). The Court "accept[s] all well-pleaded allegations as true and view[s] them in the light most favorable to" the plaintiff. *Ibid.*; *see In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (citations omitted) ("accept[ing] all factual allegations in the complaint as true"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. Colorado's SVRL is a record or paper that Title III requires the State to retain and preserve and to produce upon the Attorney General's demand.

Colorado's SVRL comes within the scope of Title III's "sweeping" retention provision. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*); *see also United States v. Mississippi*, 380 U.S. 128, 134 (1965) ("Title III . . . requires that records of voting registration be kept."); *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985) (stating that Title III encompasses "voting registration records"). In interpreting Title III, this Court should "begin[] and end[] with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). Title III's text supports a far broader investigative power than what the district court's reading allows.

Section 301 covers records "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. 20701. The term "relating to" should be defined "expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717-718 (2018). In Section 301, the

phrase expands the type of records to be preserved beyond simply applications, registrations, or receipts for payments. 52 U.S.C. 20701. Instead, any record "relating to" one of those activities—or even relating to the catchall "other act requisite to voting"—must be preserved. *Ibid.* The SVRL is not just a record that relates to voter registration, it is the preeminent and statutorily mandated record that governs all state voter registrations. 52 U.S.C. 21083(a)(1)(A)(i) ("The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State.").

The district court erred in holding that Title III excludes self-generated records and, further, that the NVRA and HAVA mandate alterations that would violate Title III were the SVRL within Title III's scope. JA Vol.2 at 371-374. The phrase "come into his possession" broadly covers records created by States and local governments and records obtained from outside sources. And updating the SVRL in compliance with the NVRA and HAVA does not alter the SVRL within the meaning of Title III.

### A. The SVRL is a record that came into the Secretary's possession.

The district court erred in holding that records created by the State fall outside the scope of Title III because Section 301 "refer[s] 'to a process by which someone *acquires* an item from an external source.'" JA Vol.2 at 372 (quoting *United States v. Benson*, 819 F. Supp. 3d 753, 768 (W.D. Mich.) (*Benson I*), *aff'd*, 179 F.4th 470 (6th Cir. 2026) (*Benson II*)). The phrase "come into his possession" refers to how and when possession began, 52 U.S.C. 20701; it does not exclude self-generated records. Any officer in possession of an SVRL came into possession at a distinct point in time.

While the district court below relied on the district court's decision in *Benson I* (JA Vol.2 at 371-372), a majority of the Sixth Circuit recently expressed agreement with the United States that an SVRL is a record that "come[s] into [the] possession" of a State's chief election official. *United States v. Benson*, 187 F.4th 462, 465 (6th Cir. 2026) (*Benson III*) (Murphy, J., concurring in denial of reh'g en banc); *id.* at 472-473 (Griffin, J., dissenting in denial of reh'g en banc); *id.* at 478-479 (Thapar, J., dissenting in denial of reh'g en banc).

a. When a statute does not itself define a term, courts "ask what that term's ordinary, contemporary, common meaning was" at the time of enactment. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433-434 (2019) (citation and internal quotation marks omitted). An officer comes into possession of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"); *id.* at 13 (defining "acquire" as "1. to get or gain by one's own efforts or actions. 2. to get possession of; get as one's own"). "Come into possession" is a broad term that both focuses the inquiry on the *moment* at which possession was obtained and denotes "possession by any means." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 933 (11th Cir. 2023) (Jordan, J., concurring) (discussing that "acquire" has two definitions, one of which is "[c]ome into possession of," which "broadly encompasses possession *by any means*" (alteration in original; emphasis added) (quoting 1 *The New Shorter Oxford English Dictionary* 20 (4th ed. 1993))); *see The American College Dictionary* 11 (1959 ed.) (defining "acquire" similarly). The term "come into his possession" is broad enough to include both voter-

generated and state-generated documents. *See* Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (May 12, 2026) (slip op. at 8-9), https://www.justice.gov/olc/media/1440346/dl.

Thus, contrary to the district court's conclusion, the word "come" cannot create a carve-out for self-generated documents. *See* JA Vol.2 at 371-373. If anything, Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first instance.[2] 52 U.S.C. 20701 (emphasis added); *see Webster's Third New International Dictionary* 453 (1966 ed. unabridg.) (defining "come into" as "to enter upon or into possession of: acquire esp. as an inheritance").

---

[2] This would not be the only time Congress has used the phrase in a manner meant to encompass both self-generation and receipt from an outside source. *See* Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) (44 U.S.C. 2107 note) (referring to a record that "was created or made available for use by, obtained by, or otherwise came into the possession of" an agency or governmental body); President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, § 3(2), 106 Stat. 3444 (44 U.S.C. 2107 note) (same).

A majority of the en banc Sixth Circuit recently acknowledged the possibility that the phrase "come into . . . possession" had developed a meaning contrary to the court's interpretation here. *Benson III*, 187 F.4th at 465 (Murphy, J., concurring); *see also id.* at 470-471 (Griffin, J., dissenting); *id.* at 478-479 (Thapar, J., dissenting). It "was a familiar legal expression" at the time Congress enacted Title III, "regularly used . . . to describe when a person lawfully assumed possession of property through an office, employment, or other legal authority." *Id.* at 470 (Griffin, J., dissenting). But that phrase "did not distinguish property according to its source," so "records that come into an official's possession could include self-created records." *Id.* at 470-471. In other words, "[t]he more natural inference is that . . . 'come into possession' [was] a familiar legal formulation identifying when the statutory duty attached, not . . . creating a separate substantive limitation on the records covered." *Id.* at 471. There is, in short, no external-source limitation to be found in the text of Title III. *Ibid.*; *Benson II*, 179 F.4th at 485 n.3, 486 n.7 (Nalbandian, J., dissenting).

The Supreme Court has demonstrated a similar understanding of the term. In cases under the Freedom of Information Act, the Supreme

Court has imposed two requirements for a document to be an agency record: "First, an agency must either *create or obtain* the requested materials," and second, "the materials [must] have *come into the agency's possession* in the legitimate conduct of its official duties" and remain in the agency's possession at the time of a records request. *United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-145 (1989) (citation and internal quotation marks omitted; emphasis added). Thus, the Supreme Court has made clear that an agency record created by the agency can be said to have "come into the agency's possession"—coming into possession of material refers to when and how the possession began. *See id.* at 145-146.

Numerous statutes use similar phrases to regulate acquiring information or property *through improper means* or to trigger duties to act based on acquiring information or property *at a particular time*. *See, e.g.*, 44 U.S.C. 3572(f) ("comes into possession of such information by reason of his or her being an officer"); 13 U.S.C. 214 (similar); 30 U.S.C. 1732(b) ("as soon as practicable after it comes into the possession of the Secretary"; "30 days after such information comes into the possession of the Secretary"); 10 U.S.C. 130c(d)(2)(C) (prescribing disclosure timing

rules for sensitive information that "came into possession or under the control of the United States more than 10 years before the date on which the request is received").

Moreover, decisions contemporaneous to the statute's passage confirm the point. *See Kennedy v. Owen*, 321 F.2d 116, 117 (5th Cir. 1963) (per curiam) (requiring the district court "to order each appellee to make available . . . all records and papers *in the possession*, custody or control of said appellee relating to any application, registration, payment of poll tax or other act requisite to voting" (emphasis added)); *Kennedy v. Lewis*, 325 F.2d 210, 212 (5th Cir. 1963) (per curiam) (requiring the district court to grant the same inspection rights); *see also* H.R. Rep. No. 956, 86th Cong., 2d Sess. 6, 37, 39 (1959) (explaining that Section 301 "would include *all records and papers* in the possession of election officers" (emphasis added)). Placing an external-source limitation on Section 301 is an unnatural reading. Election officers in Colorado acquired records and information from individual voters in the course of carrying out their duties. When they aggregated those individual records into one new, single record—the SVRL—they acquired that new record and retained it within their control, thus coming into possession of the SVRL. *See Benson*

*II*, 179 F.4th at 484 (Nalbandian, J., dissenting). The moment of the SVRL's creation is the relevant moment; after that moment, the creating officer possesses a new document that he or she previously did not possess. *See Tax Analysts*, 492 U.S. at 144-145.

b. Context further demonstrates that Congress would not have created such a distinction between documents received from outside sources and those generated by state officers. As Judge Nalbandian has pointed out, one of the practices in the Jim Crow South when Title III was enacted was "the use of 'voucher' systems, whereby municipalities required prospective voters to find registered voters who could vouch for them." *Benson II*, 179 F.4th at 486 (Nalbandian, J., dissenting) (citing Report of the United States Commission on Civil Rights, at 93 (1959) (1959 CCR Report), https://www.usccr.gov/files/historical/1959/59-001-U.pdf); *see also id.* at 475, 479 (majority opinion) (relying on the same report). "[C]ounty boards of registrars maintained internal indices that tracked the number of times each registered voter 'vouched' for an applicant." *Id.* at 486 (Nalbandian, J., dissenting) (citation omitted). These indices would be government-created records, but once an index was passed "up the ladder," the receiving "state official came into

possession of the index." *Ibid.* The indices were critical evidence for the Commission because at least one state legislature had passed a bill permitting the destruction of the registration applications themselves. 1959 CCR Report at 137. These were among the records that the Commission recommended that Congress make available for federal inspection. *Id.* at 137-138.

And the Commission itself reviewed self-generated records, including overall voter registration lists for specific counties showing severe disparities in the registration rates of black and white citizens. 1959 CCR Report at 75, 82, 89. The Commission also gathered evidence of self-generated actions by county registrars, like error corrections on white voter registration applications. *Id.* at 87-88, 93. These county tally sheets and county voter registration lists have now been replaced by the electronic SVRL as required by HAVA.

In short, documents created by state agencies historically were some of the very types of records that the United States sought to investigate to weed out discrimination. The district court's reading would exclude from the reach of Sections 301 and 303 all the most blatant evidence of discrimination—such as internal memoranda and documents

showing whether officers accepted a proper application, including the SVRL. *See Benson II*, 179 F.4th at 486 n.7 (Nalbandian, J., dissenting).

c. Even accepting an external-source limitation, though, Title III imposes an *officer-specific* duty to preserve and produce certain voting-related records coming into the officer's possession, which would encompass the SVRL. *See* 52 U.S.C. 20701. A majority of the en banc Sixth Circuit recently agreed that Title III's "language imposes a specific duty on an individual (each officer of election), not a general duty on the entire State." *Benson III*, 187 F.4th at 465 (Murphy, J., concurring); *see id.* at 473 (Griffin, J., dissenting); *id.* at 479 (Thapar, J., dissenting). That the fines and penalties follow the individual state official having possession of those records confirms the point. *See* 52 U.S.C. 20701.

"As long as even one 'officer[] of election' . . . 'comes into . . . possession' of the voter list, Title III applies." *Benson II*, 179 F.4th at 487 (Nalbandian, J., dissenting) (second ellipsis in original; footnote omitted) (quoting 52 U.S.C. 20701). So even if *some* state officials created the SVRL—"and therefore didn't 'come into . . . possession' of the list themselves" under the district court's reading—Secretary Griswold "nonetheless 'c[a]me into . . . possession' of the [SVRL]" when she

received it from other election officers. *Ibid.* (first brackets and ellipsis in original) (quoting 52 U.S.C. 20701).

In short, "[Secretary Griswold] 'came into possession' of the voter-registration list when she assumed office" or otherwise gained control of the SVRL. *Benson III*, 187 F.4th at 465 (Murphy, J., concurring). "[W]hen the [SVRL] comes under [Secretary Griswold's] official custody and control through the actions of [her] subordinates, it comes into her possession." *Id.* at 473 (Griffin, J., dissenting); *see also id.* at 479 (Thapar, J., dissenting) (similar).

### B. There is no conflict between Title III and the list maintenance requirements of the NVRA and HAVA.

The district court also held that interpreting Title III to apply to SVRLs would create a conflict with the NVRA and HAVA. JA Vol.2 at 373. Under Title III, anyone who "willfully steals, destroys, conceals, mutilates, or alters any record or paper required" under Section 20701 is subject to criminal liability. 52 U.S.C. 20702. The district court reasoned that finding an SVRL was a record or paper under Title III would "criminalize[]" compliance with the list maintenance requirements of the NVRA and HAVA that mandate continuous updates. JA Vol.2 at 373.

Not so. Reading Title III harmoniously with the NVRA and HAVA—which require continuous updates to the SVRL—yields the conclusion that an election officer properly "retain[s] and preserve[s]" an SVRL, 52 U.S.C. 20701, by updating it accurately as required by those statutes, *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1084-1085 (10th Cir. 2025) (explaining how States can "maintain" documents under the NVRA even when those documents are "dynamic" and "constantly changing").[3] There is no obligation to create a new, static version of the database with every single edit.[4] On this point, a majority of the Sixth Circuit's judges found Title III could be harmonized with the list maintenance requirements of the NVRA and HAVA to capture the SVRL in some form or another. *See Benson III*, 187 F.4th at 468 (Murphy,

---

[3] *See The American College Dictionary* 1035 (1959) (defining "retain" as, *e.g.*, "to keep possession of"; "to continue to use, practice, etc."); *id.* at 958 (defining "preserve" as, *e.g.*, "to keep alive or in existence; make lasting"; "to keep safe from harm or injury; save"; and "to keep up; maintain"); *Webster's Third New International Dictionary* 1938 (1966 unabridg.) (defining "retain" as, *e.g.*, "to hold or continue to hold in possession or use"); *id.* at 1794 (defining "preserve" as, *e.g.*, "to keep safe from injury, harm, or destruction"; to "maintain" (capitalization omitted)).

[4] The CRA would, however, require election officials to preserve the official voter registration lists distributed to local election offices for the conduct of each specific federal election. 52 U.S.C. 20701.

J., concurring); *id.* at 473-474 (Griffin, J., dissenting); *id.* at 479 n.7 (Thapar, J., dissenting).

First, the associated words surrounding "alter" in Title III illustrate that verb's narrow meaning. In *Fischer v. United States*, 603 U.S. 480 (2024), the Supreme Court interpreted a similarly worded criminal provision and explained that, under the canon of *noscitur a sociis*, each of these words must be understood as "actions that, by their nature, impair the integrity or availability of records, documents, or objects." *Id.* at 490. Performing list maintenance under the HAVA is thus not "alter[ing]" the SVRL at all, 52 U.S.C. 20702; it is, rather, "retain[ing] and preserv[ing]" the SVRL, 52 U.S.C. 20701; *see Voter Reference Found.*, 160 F.4th at 1085. The district court's contrary conclusion "contravenes the canon against implied repeal." *Benson II*, 179 F.4th at 485 (Nalbandian, J., dissenting). Even if the statutes were truly inconsistent, the "specific" list-maintenance requirements in HAVA would merely create "an exception" to the "general" prohibition in Section 20702. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

Second, Section 20702's *willful* mens rea—also ignored by the district court—erases any doubt that list maintenance under HAVA could run afoul of the CRA's ban on altering records. *See Bryan v. United States*, 524 U.S. 184, 191-192 (1998) (citation omitted) ("[I]n order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'").

And third, construing Title III to exclude the SVRL would contravene congressional intent by paralyzing the United States' ability to enforce various federal voting laws. The SVRL is not just *any* record "requisite to voting," 52 U.S.C. 20701, in an election. It is the only federally mandated statewide record of voters required to conduct every election. HAVA states that "[t]he computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii). The SVRL must "serve as the single system for storing and managing the official list of registered voters throughout the State," 52 U.S.C. 21083(a)(1)(A)(i), and "[a]ll voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on

an expedited basis at the time the information is provided to the local official," 52 U.S.C. 21083(a)(1)(A)(vi). Said differently, the SVRL is, since the passage of HAVA, the archetypal record of acts requisite to voting in an election kept by election officials.

Consequently, to investigate whether a jurisdiction engages in practices that violate the CRA, the Uniformed and Overseas Citizens Absentee Voting Act, the NVRA, HAVA, or the Voting Rights Act of 1965, for example, the Attorney General needs to examine both applications to register to vote and the final voting rolls, including the electronic SVRL, so as to assure himself that the applications are being properly processed and that list maintenance efforts have been practiced ensuring that eligible voters are not being removed from SVRL and that ineligible voters are not being included in the SVRL. *See Benson III*, 187 F.4th at 481 (Thapar, J., dissenting); *Lynd II*, 306 F.2d at 228. The district court's interpretation would effectively carve out vast numbers of federal election records, including SVRLs, from the United States' inspection authority under Title III, which was plainly not the intention of Congress in passing such "sweeping" legislation. *Lynd II*, 306 F.2d at 226.

### C. The Secretary must produce an electronic copy of the SVRL.

The Secretary argued below that the DOJ overstepped Title III by demanding an "electronic copy" of the SVRL. JA Vol.1 at 135. Though the district court did not reach this argument, this Court should reject it. Section 303 requires that a covered record "be made available for inspection, reproduction, and copying at the principal office of [the] custodian." 52 U.S.C. 20703. Nothing in the text of that statute precludes a demand for "reproduction" of the list, *ibid.*, in electronic form—particularly when the SVRL's native form is required by statute to be contained in a "centralized, interactive computerized" format, *see* 52 U.S.C. 21083(a)(1)(A).

## II. The DOJ's demand for an electronic, unredacted copy of Colorado's SVRL satisfied Title III's requirements.

Section 303 provides the Attorney General with broad authority to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" covered under Section 301 make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the

State election officer has rejected it, the Attorney General may seek an order from a federal court "to compel the production of such record or paper." 52 U.S.C. 20705.

### A. The DOJ's demand amply satisfied the CRA's threshold basis and purpose requirement.

The DOJ's demand included a statement of its basis and purpose that triggered the state's obligation to turn over records pursuant to Title III. At the very least, the DOJ satisfies the "basis" and "purpose" component of Title III in a written demand that is "based on 'Title III,'" describes "factual concerns with [the State's] voter-registration list[]," and "identifie[s] its purpose to 'assess' the State's 'compliance' with the NVRA's and HAVA's list-maintenance requirements." *United States v. Benson*, 187 F.4th 462, 466 (6th Cir. 2026) (*Benson III*) (Murphy, J., concurring); *see also id.* at 474-475 (Griffin, J., dissenting); *id.* at 480 (Thapar, J., dissenting).

#### 1. Courts play a limited role in assessing the Attorney General's demand under Title III.

a. Courts undertake a limited role in evaluating the sufficiency of a demand under 52 U.S.C. 20703. The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*,

187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and the "investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (internal quotation marks omitted).

By invoking the court's jurisdiction to obtain records required to be maintained under Section 20701, the DOJ initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962) (*Lynd II*). Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that after a [52 U.S.C. 20703] written demand for inspection of records and papers covered in [52 U.S.C. 20701], the person against whom an order for production is sought under [52 U.S.C. 20705] has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703).

Title III's special statutory proceeding limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any

. . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a State official responding to the Attorney General's demand for federal election records may not utilize litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*). The United States need not "allege specific details" underlying its demand, *Lynd I*, 301 F.2d at 822, but need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added; citation omitted). "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* at 868 (citation omitted). And Title III does not specify that "the basis" must be a factual one, as opposed to a legal one. *See* 52 U.S.C. 20703.

The Fifth Circuit's approach to Title III's "summary proceeding[s]," *Lynd II*, 306 F.2d at 226, is consistent with subsequent Supreme Court precedent. In *Donaldson v. United States*, the Court addressed a provision of the Internal Revenue Code that authorized the Secretary of the Treasury, for "the purpose of ascertaining the correctness of any [tax] return . . . or collecting any such liability[,] to summon the person liable for tax[,] or any person having possession, custody, or care of books of account containing [relevant] entries . . . to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry." 400 U.S. 517, 524 (1971) (quoting 26 U.S.C. 7602(a) (1954 ed.)) (ellipses and parentheses omitted), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520. A neighboring provision "grant[ed] the district courts of the United States jurisdiction 'by appropriate process to compel such attendance, testimony, or production.'" *Ibid.* (quoting 26 U.S.C. 7604(a) (1954 ed.)).

The Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest

those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson*, 400 U.S. at 528-529; *see Lynd II*, 306 F.2d at 226 (allowing judicial determination of whether "written demand has been made" and whether the custodian "ha[s] been given reasonable notice of the proceeding").

Beyond a summary procedure, the CRA calls for a limited substantive review as well. *See Lynd II*, 306 F.2d at 227 (acknowledging "[t]he restricted substantive nature of the proceeding"). "[N]othing in Title III gives courts a judicially manageable standard to apply in reviewing the demand's format." *Benson III*, 187 F.4th at 480 (Thapar, J., dissenting). The statute identifies only the scope of the "records and papers" that the Attorney General may demand, 52 U.S.C. 20701, and a requirement that he communicate in writing "the basis and the purpose" for his request, 52 U.S.C. 20703—not any standard against which to measure his statement of basis and purpose.

Accordingly, the only "matters open for determination" by the court when a recipient challenges that demand are "whether the written demand has been made" and "whether the custodians against whom

orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. Additionally, "[i]f, *after issuance of an order to produce*, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within this broad statutory classification," that too may be addressed by the court. *Ibid.* (emphasis added). "[T]he factual foundation for, or the sufficiency of" the statement of basis and purpose "is not open to judicial review or ascertainment." *Ibid.*; *see Lynd I*, 301 F.2d at 822. There is "no justification" for requiring detailed descriptions of the facts giving rise to the Attorney General's demand. *Lynd I*, 301 F.2d at 822.

Instead, the Attorney General need only "identify in a general way the reasons for his demand" for federal election records. *Coleman*, 313 F.2d at 868 (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating)). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible* violations of a Federal statute." *Ibid.* (emphasis added); *see, e.g.*, *Bruce*, 298 F.2d at 861 (citation omitted) ("The purpose of this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."); *In re Coleman*, 208 F.

Supp. 199, 199-200 (S.D. Miss. 1962) (verbatim), *aff'd sub. nom. Coleman v. Kennedy*, *supra*; *cf. United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950) (concluding that an administrative body to which a statute delegates investigative and accusatory duties may take steps to inform itself as to whether there is probable violation of the law).

b. The district court, however, rejected this approach. JA Vol.2 at 368. The district court eschewed this limited review process by wrongly relying on the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964). JA Vol.2 at 368. *Powell* involved an Internal Revenue Service (IRS) administrative summons. There, the Supreme Court made the unremarkable observation that because Section 7604(b) of the Internal Revenue Code (IRC) "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. However, the district court applied a much broader construction of *Powell* than warranted.

The court found that *Powell* applied to Title III, concluding that inquiry into the underlying reasons for the examination of records was permitted. JA Vol.2 at 368-369. However, the Supreme Court explained that judicial inquiry was appropriate in *Powell* where asked to enforce an

administrative summons under the IRC to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry was permitted because it was specifically authorized by Section 7605(b) of the IRC, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)).

However, no similar language limits the Attorney General's authority to compel records under the CRA. *See* 52 U.S.C. 20701-20706. Nor does the CRA provide any process for officers of election to object to Title III proceedings being initiated against them. *See ibid.* Additionally, an IRS summons "is meaningfully different from a Title III demand" because it (1) "is directed at a private party with constitutional rights," rather than a state official; (2) can demand a much more "intrusive" scope of records; and (3) "is self-executing" and "triggers criminal contempt liability," whereas a Title III demand does not. *Benson III*, 187 F.4th at 480 (Thapar, J., dissenting).

Moreover, even with language in the IRC limiting records to "necessary" investigations, the Supreme Court noted that strong deference is given to the Government to investigate, and "'does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Powell*, 379 U.S. at 57 (quoting *Morton Salt Co.*, 338 U.S. at 642-643). Indeed, *Donaldson* explained that *Powell* should not be read to impair summary enforcement proceedings that otherwise protect defendants' rights. 400 U.S. at 529.

**2. The DOJ's assertion that it was investigating Colorado's possible non-compliance with the NVRA and HAVA sufficiently stated a basis and purpose for its demand.**

The Government's statement was sufficient. The Government informed the Secretary that it "recently received a complaint alleging noncompliance by your office with the duties [of the NVRA]." JA Vol.1 at 39. The Government requested the state's voter registration records, specifically, the unredacted, electronic SVRL, pursuant to its authority under Title III, the NVRA, the HAVA, and other federal laws. JA Vol.1 at 39, 42, 103-104. That was sufficient under Title III.

a. The district court refused to consider the May 12 letter and December 1 email together when assessing the Attorney General's demand. JA Vol.2 at 370-371. By limiting its review to only the body of the December 1 email, the court disregarded prior DOJ correspondence and even the email's attachments and incorporations by reference. This was error.

The district court provided no justification for its approach. "[T]he Attorney General needn't articulate a basis and a purpose in a single communication." *United States v. Benson*, 179 F.4th 470, 488 (6th Cir. 2026) (*Benson II*) (Nalbandian, J., dissenting); *Benson III*, 187 F.4th at 474 (Griffin, J., dissenting); *id.* at 479 (Thapar, J., dissenting). "Title III refers to retention and preservation obligations 'upon demand . . . by the Attorney General"—not "*a* demand." *Benson II*, 179 F.4th at 488 (Nalbandian, J., dissenting). Both the May 12 letter and December 1 email were part of an ongoing correspondence between the DOJ and Secretary Griswold. *See* JA Vol.1 at 39-42. The subject line of the December 1 email was "Voter Registration List request follow up." JA Vol.1 at 42. The email states that it is "a follow up from original correspondence that began in May (see attached letter)." *Ibid.*

(parenthetical in original). The May 12 letter was attached to the December 1 email. *Ibid.* (list of attachments includes "20250512 Griswold from CRT.pdf"). The letters worked together to provide Secretary Griswold the relevant "notice" to which she was entitled. *Benson II*, 179 F.4th at 488 (Nalbandian, J., dissenting). Ignoring one half of the demand "shuns . . . common[]sense." *Ibid.*

b. The court found that "[t]he May 12 Letter did not include a demand for the nonpublic SVRL." JA Vol.2 at 370-371. Yet, the May 12 letter necessarily included a request for the SVRL with all data intact when it requested "all records relating to any application, registration or other act requisite to voting in an election." JA Vol.1 at 39 (citing 52 U.S.C. 20701). The May 12 letter made clear that the request for "all records" related to a DOJ investigation into a complaint that Colorado was violating the NVRA list maintenance requirements. *Ibid.* (citing 52 U.S.C. 20507). After the passage of HAVA, the nonpublic SVRL is the quintessential record relating to voter registration. It certainly falls within the DOJ's request for "all records" relating to registration. And the May 12 letter included a sufficient statement of the DOJ's basis and purpose. The letter made clear that the basis for the demand was Title

III's disclosure provisions. *Ibid.* (citing 52 U.S.C. 20703). The letter explained that the DOJ recently received a complaint that the State was not compliant in its duties under the NVRA and that the requested records would "assist [the DOJ's] efforts in evaluating the complaint." *Ibid.* The May 12 letter, on its own, was sufficient.

The December 1 email was likewise sufficient. The email expressly incorporated the May 12 letter, including letter's request for all records under Title III to assist in evaluating the NVRA complaint. JA Vol.1 at 39. The proposed MOU as well as email attachments (ignored by the district court) provided even further explanation of the basis and purpose. JA Vol.1 at 42. These attachments explain in detail the basis for the request—Title III and other federal laws—and the purpose—to investigate the NVRA complaint. JA Vol.1 at 39, 103-104.

The question before the court was whether the DOJ's stated basis and purpose for its demand put the Secretary on "reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226; *Benson II*, 179 F.4th at 488 (Nalbandian, J., dissenting). Here, the answer is undoubtedly yes.

c. Defendants' additional arguments on this issue offer no path to affirm. First, defendants argued below that the DOJ failed to give a sufficient factual basis. JA Vol.1 at 131; JA Vol.2 at 287-288, 306. The Secretary called it a "bare allegation." JA Vol.1 at 131. Common Cause pointed to the lack of "any evidence of anomalies or anything amiss with Colorado's list maintenance." JA Vol.2 at 288. But nothing in the CRA purports to authorize courts to second-guess the sufficiency or sincerity of the Attorney General's statement. So long as the demand gives the Secretary reasonable notice of the pendency of a proceeding, the court has no place for review. Furthermore, the DOJ *did*, assert a factual basis when it explained that it had received a complaint of Colorado's noncompliance with its duties under the NVRA. JA Vol.1 at 39. Nothing more was needed.

Next, Common Cause argued that the United States failed to explain how an unredacted SVRL is relevant or necessary to assessing the State's compliance with the NVRA and HAVA. JA Vol.2 at 290. But Title III requires the Department to state the "purpose" for its demand, not to provide a detailed explanation of how the demand will advance that purpose. *See* 52 U.S.C. 20703. In any event, the relevance is

straightforward. HAVA requires that the SVRL "assign[] a unique identifier to each legally registered voter in the State," 52 U.S.C. 21083(a)(1)(A), so inspecting the SVRL (unredacted so as to show these identifiers) is plainly relevant to assessing compliance with that requirement. Beyond that, the electronic SVRL allows the Department to assess whether Colorado's list contains duplicate registrations, voters who have died or changed residence, and voters who were never eligible to register—each of which bears directly on the State's compliance with its list-maintenance obligations under the NVRA and HAVA. *See* 52 U.S.C. 20507(a)(4), 21083(a)(2)(A) and (a)(4)(A).

d. The Secretary further argued that the DOJ's stated purpose is insufficient because the DOJ does not purport to address "voting rights [that] are being racially discriminated against." JA Vol.1 at 132; *see also* JA Vol.2 at 308-309. Similarly, Colorado Alliance argued that the DOJ's stated purpose is lacking because prior Title III enforcement was limited to "investigating the denial of voting rights." JA Vol.2 at 309. But Title III does not limit the permissible "purposes" for an investigation under the statute.

Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (alteration in original; citation omitted).

Here, the plain text of Title III provides no limitation on the permissible purpose of the Attorney General's demand. *See* 52 U.S.C. 20701-20706; *Benson III*, 187 F.4th at 467 (Murphy, J., concurring) ("Although § 20703 requires the DOJ to identify the 'purpose' for its demand, I see nothing in the statute's text that limits the purposes for which the DOJ may request the records."). Congress made clear in other titles included in the CRA when it intended a remedy to be limited to particular harms—namely, racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (1960) (applying Title VI of the CRA to violations of

rights "on account of race or color") (52 U.S.C. 10101). The lack of a similar limitation in Title III is significant, because "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (brackets in original; citation omitted).

Even if (as Colorado Alliance contends) Title III were limited to "investigating the denial of voting rights" (JA Vol.2 at 309), that requirement has been met here. Ensuring Colorado's compliance with the NVRA and HAVA relates to individual voting rights. By broadly authorizing the Attorney General to demand election records from States, the CRA is "one of the federal government's most important tools to inspect states' election records, ensure they comply with federal law, and thus protect the integrity of our elections." *Benson III*, 187 F.4th at 477 (Thapar, J., dissenting).

Congress passed the NVRA after finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . and disproportionately harm voter

participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). And HAVA, for its part, is a federal statute aimed at protecting voting rights. The statute "establish[es] minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666 (2002) (preamble). Those minimum standards, including accurate voter lists, were created to "address[] a variety of improvements to voting systems and voter access that were identified following the 2000 election."[5]

Moreover, the Supreme Court has recognized that fraudulent votes—which can be minimized through the NVRA's and HAVA's procedures—can "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). Indeed, "[t]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell v. Gonzalez*, 549

---

[5] U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA* 1, https://www.eac.gov/sites/default/files/HelpAmericaVoteDay/HAVA_1-Pager_10-27-22_508.pdf (last visited Oct. 5, 2026).

U.S. 1, 4 (2006) (per curiam) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). Because both the NVRA and HAVA are federal election laws that protect voting rights, "the DOJ may use the CRA to investigate possible violations of" either statute. *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich.) (*Benson I*), *aff'd*, 179 F.4th 470, *reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026).

Defendants further argued that the DOJ's only option for investigating possible NVRA violations lies with a civil action under the NVRA. JA Vol.1 at 133. But the two statutes must be read in harmony. "There is no rule of statutory interpretation that prevents a statute from interacting with, or being used in conjunction with, subsequently enacted statutes." *Benson I*, 819 F. Supp. 3d at 767. Indeed, the opposite is true: "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000), *superseded by statute on other grounds*, Family Smoking Prevention and Tobacco Control Act of 2009, 123 Stat. 1776, 21 U.S.C. 387a; *see United States v. Fausto*, 484 U.S. 439, 453 (1988) ("Th[e] classic judicial task of reconciling many laws enacted over

time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute."). Accordingly, it is appropriate to interpret the CRA and the subsequently enacted the NVRA and HAVA in concert.

As the Secretary acknowledged (JA Vol.1 at 133), Congress gave the Attorney General the authority to enforce the NVRA and HAVA. *See* 52 U.S.C. 20510(a) (NVRA), 21111 (HAVA). This enforcement authority does not operate in a vacuum. Title III gives the Attorney General investigative powers; the NVRA and HAVA give his enforcement powers. *See Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63-64 (2024) (citation omitted) (discussing the "strong presumption" that "federal statutes touching on the same topic" "can coexist harmoniously" and a court's duty to "giv[e] effect to both").

Viewed in this light, the lack of a tool for records inspection by the Attorney General in the NVRA and HAVA comparable to Section 303 *supports* the DOJ's position. It is implausible that Congress intended for the Attorney General to lack the ability to inspect complete records so pertinent to his enforcement authority under the NVRA and HAVA.

Because it is well-settled that "Congress legislates against the backdrop of existing law," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted), a better inference is that Congress saw no need to provide an inspection provision for the Attorney General in the later-enacted the NVRA and HAVA, because the CRA provided a pre-existing investigative tool.

### B. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under 52 U.S.C. 20703.

Common Cause argued below that the Attorney General's stated purpose is a pretext for creating a national voter database or otherwise targeting voters. JA Vol.2 at 284-285. The district court did not address this argument. It provides no basis to affirm.

Again, Section 303 of Title III (52 U.S.C. 20703) leaves no room for a court to second-guess the stated basis and purpose for the Attorney General's demand. Even if the demand was judicially reviewable, this Court should reject speculative allegations as to the true purpose of the Department's request. Even under precedents involving administrative subpoenas, *see Benson I*, 819 F. Supp. 3d at 765 ("constru[ing] a request for records under the CRA as a form of administrative subpoena"), the

burden to show a lack of good faith "is a heavy one." *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1182-1183 (10th Cir. 2019) (citation omitted).[6] The party trying to make that showing must "point[] to specific facts or circumstances plausibly raising an inference of bad faith." *Id.* at 1194 (citation omitted); *see also United States v. Balanced Fin. Mgmt.*, 769 F.2d 1440, 1444-1445 (10th Cir. 1985) (citation omitted) (explaining that a subpoena recipient must "factually refute[]" "material Government allegations" to justify an evidentiary hearing). News articles that are not properly before the court on a motion to dismiss fall well short of that standard. *See* JA Vol.2 at 296.

## III. Neither Title III nor privacy laws permit Secretary Griswold to redact requested information.

Although the district court did not reach the issue, defendants argued below that the demand for an unredacted, electronic copy of

[6] The United States does not agree that these precedents apply to CRA claims because, as the Fifth Circuit has explained, the CRA leaves *no* room for evaluating the sufficiency of the Attorney General's asserted purpose. *Lynd II*, 306 F.2d at 226; *see also Civil Rights—1959: Hearings Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong., 1st Sess. 191-192 (1959) (statement of Attorney General William P. Rogers) (explaining the need for the power of "production and inspection . . . rather than for the issuance of a subp[o]ena"). The United States invokes these precedents for the sake of argument.

Colorado's SVRL is beyond the scope of Title III and violates federal and state privacy law. *See* JA Vol.1 at 74-76, 134-135; JA Vol.2 at 292-293, 310-312. As an initial matter, the Secretary's duty to comply with Title III is independent of any duty the Department has under privacy laws. *See United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir. 1983) (holding that compliance with a provision of the Privacy Act was "not a prerequisite to enforcement of an [Internal Revenue Service] summons"). Even if the Department's compliance were lacking—and it is not—the Secretary's obligations under Title III are separate from, and not dependent on, the Department's obligations under other federal laws. In any event, the Department is complying with all applicable privacy laws.

### A. Title III does not permit the Secretary to choose to redact requested information.

Defendants argued below that even if the SVRL is subject to Title III, the Secretary is nonetheless free to withhold the personal identifying information from the DOJ. JA Vol.1 at 134-135; JA Vol.2 at 292-294, 311. However, Title III requires production of an unredacted SVRL. Even in the 1960s, voter-registration applications—unquestionably records covered by the CRA, *see* 52 U.S.C. 20701—often contained the same sort of personal information that defendants seek to shield here, such as

birthdates and addresses. *See, e.g.*, *United States v. Duke*, 332 F.2d 759, 761, 768 (5th Cir. 1964) (good moral character, literacy); *United States v. Mississippi*, 229 F. Supp. 925, 995 & nn.92-93 (S.D. Miss. 1964) (Brown, J., dissenting) (birthdate, good moral character, address, length of residency), *rev'd*, 380 U.S. 128 (1965); *Gray v. Main*, 309 F. Supp. 207, 219 (M.D. Ala. 1968) (birthdate). Precisely because such privacy concerns might be implicated, Title III prohibits the Attorney General from "disclos[ing] any record or paper produced pursuant to [Title III], or any reproduction or copy," except to Congress, governmental agencies, and in judicial proceedings, "[u]nless otherwise ordered by a [federal] court." 52 U.S.C. 20704.

Defendants' contrary arguments rely on cases holding that the NVRA does not prohibit the redaction of sensitive personal data contained in voter files. *See* JA Vol.1 at 135; JA Vol.2 at 292-294 (both citing *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)); *see also* JA Vol.2 at 311 (citing *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025)). Those NVRA cases are inapposite. The NVRA contains a public-inspection requirement, 52

U.S.C. 20507(i)(1), and because of the "privacy risks implicated by the public release" of voter data, courts have read into that provision an option for States to redact "uniquely or highly sensitive personal information." *Bellows*, 92 F.4th at 56 (collecting cases). Those concerns are absent here. Title III does not vest the public with a right to inspect the records the Attorney General demands; to the contrary, it safeguards those records from disclosure. 52 U.S.C. 20704. That the NVRA permits the public to inspect certain voter information therefore has no bearing on whether Title III permits the Attorney General to demand an unredacted SVRL.

Common Cause likewise relies on the NVRA cases to suggest that "[r]edaction also may be affirmatively required if the disclosure would 'create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments.'" (quoting *Long*, 682 F.3d at 339). Yet, they fail to explain why the DOJ's enforcement of federal list maintenance laws would burden the right to vote. To the contrary, by ensuring compliance with federal election laws, the DOJ's enforcement *protects* the right to vote.

First, the list-maintenance provisions of the NVRA and HAVA protect registrants from improper removal from a State's SVRL. *See* 52 U.S.C. 20507(a)(3), (b)(2) and (d) (limiting grounds for removal from the SVRL); 52 U.S.C. 21083(a)(2). Indeed, the DOJ's investigation would uncover undue removals or improper processes that risk such removal. Further, properly maintained voter registration lists reduce election fraud by allowing election authorities to determine in advance that a person satisfies eligibility requirements for voting. The use of a voter registration list allows election officials to keep track of who has cast a ballot and who has not, making it harder for a single person to cast multiple ballots. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) (recognizing that invalid votes can "dilute the right of citizens to cast ballots that carry appropriate weight"). When voting rights are jeopardized by unfair registration processes, voter confidence falls and voter participation with it. This is exactly the harm Congress sought to prevent. *See* 52 U.S.C. 20501(a)(3).

**B. Federal law preempts any contrary Colorado privacy law.**

Defendants argued that Colorado law requires the redaction of certain portions of the SVRL before it may be shared. *See* JA Vol.1 at 124;

JA Vol.2 at 310 (citing Colo. Rev. Stat. § 1-2-302(8)). State law does not permit Colorado to defy federal law. The Department is entitled under federal law to compel and inspect Colorado's unredacted SVRL, and Congress has addressed the privacy concerns implicated by this process by protecting against unauthorized disclosure of these private records. 52 U.S.C. 20704. To the extent state law prohibits Colorado from complying with that demand, state law must yield. *See* U.S. Const. Art. VI, Cl. 2; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'" (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001))).

The Constitution gives Congress authority to override state choices regarding the conduct of federal elections, including voters' privacy. U.S. Const. Art. I, § 4, Cl. 1. The Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997). "[T]he regulations made by Congress are paramount to those made by the State

legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Ibid.* (brackets in original) (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)). Title III imposes a "sweeping" obligation on election officials to preserve and, on request, produce registration records pertaining to federal elections, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), while imposing its own privacy protections for the records so produced, 52 U.S.C. 20704. If Colorado's laws impose greater privacy protections that would bar production, they conflict with and thwart the enforcement of federal law and are therefore preempted. *See Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023) ("It is a bedrock rule . . . that federal law preempts state law when the two conflict.").

### C. The DOJ's demand complied with the Privacy Act.

Various defendants allege that the DOJ's enforcement efforts violate multiple aspects of the Privacy Act. First, Common Cause alleges that the DOJ's collection of SVRLs would violate the provision of the Privacy Act that prohibits federal agencies from "maintain[ing] [any] record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute . . . or unless

pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. 552a(e)(7); *see also* JA Vol.2 at 290. Yet, enforcing the CRA's prohibition on the willful destruction or alteration of records, 52 U.S.C. 20702, and the NVRA's and HAVA's list-maintenance requirements, satisfies that law-enforcement exception. *See* 52 U.S.C. 21111. The Department nonetheless agrees that certain information—like an individual's party affiliation and how that individual votes—both "describ[es] how an[] individual exercises" his First Amendment rights and is not "pertinent to" the Department's investigation, 5 U.S.C. 552a(e)(7), and accordingly will not object to redaction of that information.

Next, Colorado Alliance argued that the Department failed to comply with the Privacy Act's requirement that the agency include appropriate identification and use of a System of Records Notice (SORN). JA Vol.2 at 313; *see* 5 U.S.C. 552a(e)(4). The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896). The Department published

the requisite notice about its collection of voter information in the Federal Register. *See* 5 U.S.C. 552a(e)(4). The Department has published a full list of routine uses for its collection of voter information in the SORN titled JUSTICE/CRT-001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); 82 Fed. Reg. 24,147 (May 25, 2017). The SORN states that its records are kept "in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51," 68 Fed. Reg. at 47,611, and the cited regulation makes clear that the Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R. 0.50(a). The SORN thus covers the NVRA, HAVA, and the CRA as statutes for routine use.[7]

The SORN also identifies the categories of individuals on whom records are maintained, 5 U.S.C. 552a(e)(4)(B), including "[s]ubjects of

[7] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited Oct. 5, 2026).

investigations, [and] victims," 68 Fed. Reg. at 47,611. The term "subject[]" is a "term[] of art in the context of DOJ investigations," *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted), which, for as long as the relevant SORN has existed, has included anyone whose "conduct is within the scope of the . . . investigation," U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#. Persons who appear in a statewide voter registration list are "[s]ubjects of investigations," as their registrations are within the scope of the Division's investigation into list maintenance; and because votes cast by eligible voters may be diluted by votes cast by ineligible voters, *see Brnovich*, 594 U.S. at 672, eligible voters are potential "victims" of NVRA and HAVA noncompliance, 68 Fed. Reg. at 47,611. The Privacy Act therefore provides no basis to dismiss the United States' Complaint.

### D. The Attorney General's demand complied with the E-Government Act.

The Secretary argued below that the United States had not complied with the E-Government Act by failing conduct a privacy impact assessment (PIA). JA Vol.1 at 75. Pursuant to the E-Government Act, agencies must "conduct a [PIA]" before "initiating a new collection of

information" in particular circumstances "if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons." E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(A)(ii) and (B)(i), 116 Stat. 2899, 2921-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). And a "collection of information" is—with certain exclusions noted below—the act of "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A)(i) and (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502 and 3601). The PIA requirement does not apply here for several reasons.

First, the Attorney General has not asked identical questions of, nor imposed any reporting requirements on, any persons in connection with the DOJ's demand for Colorado's (or any State's) SVRL. E-Government Act § 208(b)(1)(B)(i); *cf.* 31 U.S.C. 5314(a) (mandating that

the Secretary of the Treasury require individuals "to keep records, file reports, or keep records and file reports" whenever individuals engage in transactions or maintain relationships with "any person with a foreign financial agency").

Second, a "collection of information" does not include information collected during an investigation like the type the Department is carrying out here. "The term 'collection of information' . . . shall not include a collection of information described under [44 U.S.C. 3518(c)(1)]." 44 U.S.C. 3502(3)(B); *see* E-Government Act § 201. And Section 3518(c)(1)(B), in turn, excludes any collection of information "during the conduct of . . . an . . . investigation involving an agency against specific individuals or entities." 44 U.S.C. 3518(c)(1)(B). The Department's investigation into Colorado's compliance with the NVRA and HAVA falls squarely within this carve-out.

Third, the Attorney General has not "initiat[ed] a new collection of information." E-Government Act § 208(b)(1)(A)(ii) and (B)(i). "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Electronic Privacy Info. Ctr.* (*EPIC*) *v. United States Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C.), *vacated and remanded on other grounds*, 928

F.3d 95 (D.C. Cir. 2019), nor does the term "new." *See* 44 U.S.C. 3502, 3601. Accordingly, courts give these terms their "ordinary meaning" and may consult dictionary definitions. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-568 (2012). "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to, originate, 'start' (a course of action, practice, etc.).'" *EPIC*, 356 F. Supp. 3d at 89 (brackets in original; citation omitted) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002); *see Merriam-Webster's Collegiate Dictionary* 780 (10th ed. 2002) (defining "new" as "having existed or having been made but a short time" or "different from one of the same category that has existed previously").

The demand in this case did not begin any new collection of information. The Attorney General demanded that the Secretary provide the State's SVRL, which the State was required to "define[], maintain[], and administer[] at the State level." 52 U.S.C. 21083(a)(1)(A). Seeking information already maintained by the State due to *pre-existing* "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A)(i)

(defining "collection of information"), is not the "*initiat*[*ion* of] a *new* collection of information," E-Government Act § 208(b)(1)(A)(ii) (emphasis added). Thus, the DOJ's demand did not run afoul of the E-Government Act.

### E. The Driver's Privacy Protection Act does not allow the Secretary to deny the DOJ list maintenance data.

In the district court, the Secretary argued that the DOJ's demand violated the Drivers' Privacy Protection Act (DPPA), 18 U.S.C. 2721 *et seq*. JA Vol.1 at 75. Although the DPPA generally prohibits the disclosure of "personal information" obtained by a State Department of Motor Vehicles (DMV) in connection with a motor vehicle record, *see* 18 U.S.C. 2721(a) and (c), 2725(1) and (3)-(4), the statute explicitly permits certain governmental uses. Under 18 U.S.C. 2721(b)(1), disclosure is allowed "for use by any government agency . . . in carrying out its functions," including law enforcement or other regulatory enforcement purposes. *See also Reno v. Condon*, 528 U.S. 141, 145 & n.1 (2000) ("The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes," including "for use 'by any government agency . . . in carrying out its functions.'" (quoting 18 U.S.C. 2721(b)(1)). The DOJ's

demand for an electronic, unredacted copy of Colorado's SVRL falls squarely within this exception.

For these reasons, privacy concerns do not entitle defendants to dismissal.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the United States' Title III claim and denying the Motion to Compel, and remand with instructions to order the Secretary to immediately produce the requested unredacted SVRL. This Court should make clear that Title III authorizes the Department to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA and HAVA.

Further, because the DOJ is entitled to "prompt and expeditious inspection" of voting records under Title III, the "mandate of this Court [should] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962); *see* Fed. R. App. P. 2, 41(b).

In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc. *See* Fed. R. App. P. 2, 40(d)(1).

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ J. Katie Neff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
J. KATIE NEFF
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 333-0019

Date: October 5, 2026

## STATEMENT REGARDING ORAL ARGUMENT

The United States is willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument, if the Court believes that the benefit of oral argument would outweigh the time concerns.

s/ J. Katie Neff
J. Katie Neff
Attorney

Date: October 5, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 12,961 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ J. Katie Neff
J. Katie Neff
Attorney

Date: October 5, 2026

# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,

Defendant.

---

**ORDER**

---

This matter comes before the Court on the United States' Motion for Order to Compel Records Demanded Pursuant to the Civil Rights Act of 1960 [Docket No. 2], defendant Colorado Secretary of State Jena Griswold's Motion to Dismiss [Docket No. 40] pursuant to Fed. R. Civ. P. 12(b)(6), Intervenors Common Cause, Kyle Giddings, and Anne Keke's Motion to Dismiss [Docket No. 85], and Intervenors Colorado Alliance for Retired Americans and Britton DeFord's Motion to Dismiss [Docket No. 86].[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. LEGAL BACKGROUND

Title III of the Civil Rights Act (the "CRA") provides that:

[1] On June 8, 2026, the magistrate judge granted the motions to intervene of Common Cause, Kyle Giddings, and Anne Keke (the "Common Cause Intervenors") and Colorado Alliance for Retired Americans and Britton DeFord (the "Alliance Intervenors"). Docket No. 84 at 13-14. On July 10, 2026, the Court granted the Alliance Intervenors leave to file a supplemental brief in support of their motion to dismiss. *See* Docket Nos. 89, 94.

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

52 U.S.C. § 20701. Section 20703, which provides a mechanism for the Attorney General to obtain the records and papers described in § 20701, states as follows:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703.

States must maintain a statewide voter registration list ("SVRL") in accordance with the Help America Vote Act ("HAVA") and National Voter Registration Act ("NVRA"). *See* 52 U.S.C. §§ 21083, 20507. Colorado's SVRL is stored in a database known as SCORE. Docket No. 37-10 at 1, ¶ 2. SCORE is "constantly updated" as each county clerk and recorder, upon receiving new information regarding a voter, uploads voter information in SCORE. *Id.*, ¶ 3. For instance, SCORE is updated when a voter moves and is updated to remove deceased voters. *See id.* at 2, 3, ¶¶ 3, 8. Colorado's Department of State makes available a public version of Colorado's SVRL that excludes

a voter's driver's license number, the last four digits of his or her social security number, and the voter's full date of birth. *Id.* at 3, ¶ 11. The public version includes the voter's HAVA identifier, Voter ID, name, address, and birth year. *Id.* The public version also includes information about the voter's party registration. *Id.* The public can request a version of the SVRL that includes voting history. *Id.* Under Colo. Rev. Stat. § 24-72-204(3.5)(b), voters may request that their information be withheld from the public version of the SVRL if inclusion on the public list would expose the voter or his or her immediate family to criminal harassment or bodily harm. *Id.*, ¶ 12.

## II. FACTUAL BACKGROUND[2]

The Attorney General received a complaint alleging that defendant Jena Griswold ("the Secretary") is failing to comply with 52 U.S.C. § 20507. Docket No. 1 at 5, ¶ 19. On May 12, 2025, the Attorney General sent the Secretary a letter (the "May 12 Letter"), "seeking information regarding Colorado's compliance with federal election law." *Id.*, ¶ 20. The May 12 Letter requested (a) a copy of the records identified in § 20701 and a certification that no record required for preservation has been deleted, destroyed, or altered from its original form, *id.*, ¶ 21; (b) that the Secretary provide "all statutes, regulations, written guidance, internal policies, or database user manuals that set out the procedures Colorado has put in place relating to implementing the requirements of 52 U.S.C. § 20701," *id.*; and (c) that the information be provided within 14 days. *Id.*, ¶ 22. On May 27, 2025, the Secretary responded to the May 12 Letter, providing information from the public version of the SVRL and an addendum with the

[2] The well-pled facts taken from the United States' complaint, Docket No. 1, are presumed true for the purpose of ruling on the Secretary's motion to dismiss.

relevant statutes and regulations. *See* Docket No. 37-10 at 3, ¶ 14; Docket No. 37-3 at 2-3. The Secretary did not provide information from the nonpublic version of the SVLR, which includes a voter's driver's license number, the last four digits of his or her social security number, and the voter's full date of birth. Docket No. 37-3 at 2-3; Docket No. 37-10 at 3, ¶ 11.[3]

On December 1, 2025, the United States sent a follow-up email to the Secretary requesting Colorado's SVRL. Docket No. 1 at 5-6, ¶ 24. The email read:

> The United States is prepared at this early stage to enter into an MOU with the State of Colorado regarding the sharing of the nonpublic, unredacted voter registration list. I have attached that MOU, which we believe cures all potential concerns a state might rightfully raise regarding its citizens' private data and identifying information.

*Id.* On December 3, 2025, the Secretary responded, "We received your request. We will not be producing unredacted voter files or signing the MOU." *Id.* at 6, ¶ 25.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the

[3] The United States does not dispute that the Secretary responded and provided information that was responsive to all of its requests, except for the request for nonpublic SVRL information. *See* Docket No. 49 at 7 n.2.

statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## IV. ANALYSIS

The United States brings a single claim alleging that the Secretary violated 52 U.S.C. § 20703 by failing to produce the records requested by the United States. *See* Docket No. 1 at 6, ¶¶ 26-28. The United States also filed a motion to compel these records pursuant to § 20701. *See* Docket No. 2 at 1. The United States requests a

copy of the SVRL that includes each registrant's name, date of birth, address, the last four digits of the registrant's social security number, and driver's license number, state identification number, or HAVA identifier. *See id.* at 2-3.

### A. <u>Whether the Federal Rules of Civil Procedure Apply</u>

The United States relies on *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962), for the proposition that the Federal Rules of Civil Procedure do not govern this case or apply to the Secretary's Rule 12(b)(6) motion to dismiss. Docket No. 49 at 9-11. Furthermore, the United States contends that the Secretary may not, through her motion, question the Attorney General's basis and purpose for his request under Title III. *See id.* at 21. In *Lynd*, the Fifth Circuit held that the Attorney General demanding records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Thus, *Lynd* held that a Title III action "is a special statutory proceeding" that "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *See id.* at 225-26. *Lynd* further held that, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's statement of the basis and the purpose therefor as set forth in the written demand." *Id.* at 226 (internal quotation and citation omitted).

The Court agrees with other courts to have considered the issue that the statutory text of Title III demonstrates that the Court has the authority to determine whether the Attorney General has complied with the statutory requirements to compel the production of records described in § 20701. In *United States v. Weber*, 816 F.

Supp. 3d 1168, 1182 (C.D. Cal. 2026), the court found that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." Similarly, in *United States v. Oregon*, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026), the court found that *Lynd* did not prevent the court from considering the Oregon Secretary of State's motion to dismiss and that "the starting point is the relevant language of Title III." *See also United States* v. *Jared DeMarinis*, 2026 WL 1780586, at *3 (D. Md. June 18, 2026) ("Nothing in the CRA or this Court'[s] Local Rules provides that the Federal Rules of Civil Procedure do not apply to these proceedings, and this Court has entered no such order.").

The CRA says nothing suggesting the inapplicability of the Federal Rules of Civil Procedure. Under § 20705,

> The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.

52 U.S.C. § 20705. In *United States v. Powell*, 379 U.S. 48, 51 (1964), the Supreme Court considered an enforcement proceeding brought by the government pursuant to 26 U.S.C. § 7604(a), which governs the enforcement of summons issued by the Internal Revenue Service. Like § 20705, § 7604(a) affords the United States district court "jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data." 26 U.S.C. § 7604(a). *Powell* held that, "[b]ecause s 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Powell*, 379 U.S. at 58 n.18. Similarly, here, there is no provision that specifies the procedure to be followed and therefore the Federal Rules of Civil Procedure apply. "The Federal

Rules are the default rules in civil litigation" and, while "Congress may override that command when it wishes," courts do not "lightly infer that Congress has done so; and silence on the subject is seldom enough." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023). Accordingly, the Court finds that the Federal Rules of Civil Procedure govern and the Court can "evaluat[e] the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether – applying Rule 12(b)(6) standards – a valid Title III demand was made in the first place." *See Oregon*, 2026 WL 318402, at *8.

### B. Whether the United States Requests Records Covered by Title III of the CRA

The Secretary moves to dismiss the United States' complaint pursuant to Rule 12(b)(6), arguing that the United States fails to allege a plausible claim for relief under § 20703 because (1) the nonpublic SVRL requested by the United States does not constitute a record under Title III of the CRA; (2) the United States does not plausibly allege a sufficient basis and valid purpose for its request; and (3) only in-person inspection of covered records is permitted under § 20703. *See* Docket No. 40 at 9. The Common Cause Intervenors argue that the United States' demand exceeds the statutory authority granted by the CRA, any records disclosed under the CRA should be redacted, and that the Federal Rules of Civil Procedure govern and the United States is therefore not entitled to a summary disposition of this case. *See* Docket No. 85 at 5-18. The Alliance Intervenors also argue that the United States has not asserted a proper basis and purpose for its demand, Title III does not prohibit the redaction of sensitive voter information, and that the United States failed to comply with the Privacy Act. *See* Docket No. 86 at 5-15.

The United States responds that (a) the United States' purpose in requesting records under § 20703 need not be related to investigating race-based denial of voting rights and the Secretary cannot challenge the Attorney General's basis and purpose for requesting records, Docket No. 49 at 14-22; (b) Colorado's SVRL constitutes a record under § 20701, *id.* at 22-28; and (c) the United States is entitled to all information in the SVRL, notwithstanding Colo. Rev. Stat. § 24-72-204. *Id.* at 28-31. In response to the Common Cause Intervenors,[4] the United States also contends that Title III requires the Secretary to comply with its demand and that the demand does not violate federal or state privacy laws. *See* Docket No. 98 at 4-14.

The demand that the United States seeks to enforce is the December 1 demand for information from the nonpublic SVRL. As articulated in the December 1 email, the United States seeks records listing each voter's name, date of birth, address, last four digits of the voter's social security number, and driver's license number, state identification number, or HAVA identifier. *See* Docket No. 1 at 5-6, ¶ 24; Docket No. 2 at 2-3.

Pursuant to 52 U.S.C. § 20703, the demand submitted by the Attorney General "shall contain a statement of the basis and the purpose" for the demand. The December 1 email does not state a basis and purpose for demanding a "nonpublic, unredacted voter registration list," but rather states that it is a "follow up from original correspondence that began in May." *See* Docket No. 5-1 at 5. The May 12 Letter did not include a demand for the nonpublic SVRL. *See* Docket No. 1 at 5; Docket No. 5-1

[4] The United States filed a response to Common Cause Intervenors' motion to dismiss, Docket No. 98, but not the Alliance Intervenors' motion to dismiss.

at 2-3. Therefore, the December 1 email failed to provide a sufficient basis and purpose for requesting the nonpublic SVRL. *See Oregon*, 2026 WL 318402, at *9 (rejecting plaintiff's "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis'" between two separate letters sent to defendant). Even if the United States did provide a proper purpose and basis under § 20703 in the December 1 email, the Court, for reasons discussed below, finds that the nonpublic SVRL is not a record as contemplated under §§ 20701 and 20703.

A demand made under § 20703 applies to "[a]ny record or paper required by section 20701." 52 U.S.C. § 20703. Section 20701, in turn, covers "all records and papers which come into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election."

In cases where the United States has sought SVRLs pursuant to § 20703, courts have found that "a voter registration list is not a record subject to retention and preservation under § 20701." *See United States v. Wis. Elections Comm'n*, --- F. Supp 3d ----, 2026 WL 1430354, at *3 (W.D. Wis. May 21, 2026); *see, e.g., United States v. Benson*, 819 F. Supp. 3d 753, 768 (W.D. Mich. 2026) (agreeing that § 20701 "refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials"); *United States v. Bellows*, --- F. Supp 3d ----, 2026 WL 1430481, at *6 (D. Me. May 21, 2026) ("Title III's commands therefore pertain to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to

vote are registered."); *United States v. Fontes*, --- F. Supp 3d ----, 2026 WL 1177244, at *5 (D. Ariz. Apr. 28, 2026) ("based on the plain meaning of the text of § 20701, Arizona's SVRL is not a document subject to request by the Attorney General pursuant to § 20703"); *DeMarinis*, 2026 WL 1780586, at *5 ("Accordingly, this Court joins every court to have addressed this issue in concluding that an SVRL is not a record or paper that a state must produce to the United States under the CRA."); *United States of American v. Bd. OF Elections of the State of N.Y.*, 2026 WL 1999921, at *8 (N.D.N.Y. July 10, 2026) ("Plaintiff's CRA claim fails at the outset for an even more fundamental reason – the Attorney General is simply not entitled to the NYSVoter List under Title III. This conclusion is supported by six recent district court decisions which have determined that voter registration lists are not records subject to retention and preservation under § 20701."); *United States v. Koski,* 2026 WL 2032532, at *4 (E.D. Va. July 14, 2026) ("corresponding with a growing group of federal courts in analogous suits, this Court holds that Virginia's SVRL is not a record subject to production under Title III of the CRA").

Section 20701 covers records and papers "which come into [the state's] possession," *see* 52 U.S.C. § 20701, referring "to a process by which someone *acquires* an item from an external source." *See Benson*, 819 F. Supp. 3d at 768. Section 20701 applies to those documents that "election officials *receive*, rather than *create*," specifying that such documents must relate to "any application, registration, payment of poll tax, or other act requisite to voting in such election." *Id.* at 768-69 (citing 52 U.S.C. § 20701). These are terms that "refer[] to something that the voter submits or does as part of the registration process." *Id.* If Section 20701 also covered records created by

the state, then the phrase "come into [the state's] possession" would be superfluous. *See Fontes*, 2026 WL 1177244, at *2 ("if § 20701 was intended to encompass records created by the state, that meaning could have been achieved by omitting the phrase altogether"); *Green Tree Acceptance, Inc. v. Wyo. Nat'l Bank*, 1 F.3d 1249, 5 (10th Cir. 1993) ("statutes should be construed to avoid making any word superfluous").

Furthermore, if § 20701's definition of records includes Colorado's SVRL, then § 20701 would be in conflict with other statutes that regulate the maintenance of voter registration records. The NVRA and HAVA require "an SVRL's constant alteration" to ensure that the SVRL contains accurate voter information. *See DeMarinis,* 2026 WL 1780586, at *5; 52 U.S.C. §§ 20501(b)(4), 20507(a)(4), 21083(a)(1)(A). Section § 20702 criminalizes the alteration of "any record or paper required by section 20701 of this title to be retained and preserved." *See* 52 U.S.C. § 20702. If the Court were to adopt the United States' proposed definition of "record or paper," the Secretary would violate 52 U.S.C. § 20702 each time she updated the SVRL to comply with the NVRA and HAVA. *See DeMarinis,* 2026 WL 1780586, at *5 ("The United States's proposed interpretation of the CRA would therefore criminalize the same conduct that the NVRA and HAVA require. This Court will not read § 20701 to produce such an absurd result.").

The authorities cited by the United States do not support its position. *See* Docket No. 49 at 22-24. For instance, in *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438 (D. Md. 2019), the court considered whether a voter registration list is a record under Section 8(i) of the NVRA, not § 20701. In *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 851 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d

430 (5th Cir. 1961), plaintiff requested "production of all records and papers in [defendants'] possession or under their control relating to any application, registration, payment of poll tax, or other act requisite to voting." Thus, the plaintiff in *Gallion* requested records unequivocally covered under § 20701 and the court did not reach the question of whether voter rolls would constitute records or papers under the statute.

In order to state a claim for violation of § 20703, the United States must allege that it requested a "record or paper required by section 20701." 52 U.S.C. § 20703. Because the Court finds that Colorado's SVRL is not a record or paper that must be produced pursuant to §§ 20701 and 20703, the United States has failed to state a claim under § 20703. Accordingly, the Court will grant the motions to dismiss of the Secretary, the Common Cause Intervenors, and the Alliance Intervenors and deny the United States' motion to compel and dismiss its claims.

## V. CONCLUSION

Therefore, it is

**ORDERED** that the United States' Motion for Order to Compel Records Demanded Pursuant to the Civil Rights Act of 1960 [Docket No. 2] is **DENIED**. It is further

**ORDERED** that Secretary of State Jena Griswold's Motion to Dismiss [Docket No. 40] is **GRANTED**. It is further

**ORDERED** that the Common Cause Intervenors' Motion to Dismiss [Docket No. 85] is **GRANTED**. It is further

**ORDERED** that the Alliance Intervenors' Motion to Dismiss [Docket No. 86] is **GRANTED**. It is further

**ORDERED** that the United States' complaint is **DISMISSED with prejudice**.[5] It is further

**ORDERED** that this case is closed.

DATED August 3, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

[5] Because Colorado's SVRL is not a record that must be produced under 52 U.S.C. § 20703, the United States fails to state a claim for relief and amending the complaint would be futile. Therefore, the Court will dismiss the complaint with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.")

# ATTACHMENT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,

Defendant.

v.

COMMON CAUSE,
KYLE GIDDINGS,
ANNE KEKE,
COLORADO ALLIANCE FOR RETIRED AMERIANS, and
BRITTON DEFORD,

Intervenor-Defendants.

---

## FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order [Docket No. 102] of United States District Judge Philip A. Brimmer entered on August 3, 2026, it is

ORDERED that Secretary of State Jena Griswold's Motion to Dismiss [Docket No. 40] is GRANTED. It is further

ORDERED that the Common Cause Intervenors' Motion to Dismiss [Docket No. 85] is GRANTED. It is further

ORDERED that the Alliance Intervenors' Motion to Dismiss [Docket No. 86] is GRANTED. It is further

ORDERED that the United States' complaint is DISMISSED with prejudice. It is further

ORDERED that judgment shall enter in favor of defendant and against plaintiff. It is further

ORDERED that this case is closed.

Dated: August 4, 2026.

FOR THE COURT:

Jeffrey P. Colwell, Clerk

By s/ S. Grimm
Deputy Clerk