No. 26-1326

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,
Defendant-Appellee

COMMON CAUSE; KYLE GIDDINGS; ANNE KEKE; COLORADO ALLIANCE FOR RETIRED AMERICANS; BRITTON DEFORD,
Defendants Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
The Honorable Judge Philip A. Brimmer
D.C. No. 1:25-cv-3967-PAB-TPO

# JOINT APPENDIX
Volume 2 of 2 (Pages 282-380)

*(See inside cover for Counsel)*

*(Continuation of Counsel)*

PETER G. BAUMANN
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
(720) 508-6152
peter.baumann@coag.gov

LANE TOWERY
Colorado Attorney General
Ralph L. Carr Judicial Building
1300 Broadway
Denver, CO 80203
720-508-6470
lane.towery@coag.gov

*Counsel for Jena Griswold*

ELISABETH C. FROST
Elias Law Group LLP
250 Massachusetts Avenue NW
Suite 400
Washington, D.C. 20001
(202) 968-4513
efrost@elias.law

JOSHUA CHARLES ABBUHL
Elias Law Group LLP
250 Massachusetts Avenue NW
Suite 400
Washington, D.C. 20001
(202) 987-5228
jabbuhl@elias.law

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
J. KATIE NEFF
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 11403
Washington, D.C. 20044-4403
(771) 333-0019
jeri.neff@usdoj.gov

*Counsel for the United States of America*

*(See next page for continuation of Counsel)*

(*Continuation of Counsel)*

KEVIN RONALD KOWALEWSKI
Elias Law Group
250 Massachusetts Avenue NW
Suite 400
Washington, D.C. 20001
(202) 985-3535
kkowalewski@elias.law

WALKER ROY MCKUSICK
Elias Law Group
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(202) 968-4659
wmckusick@elias.law

UZOMA NKEM NKWONTA
Elias Law Group
250 Massachusetts Avenue NW
Suite 400
Washington, D.C. 20001
(202) 968-4517
unkwonta@elias.law

*Counsel for Colorado Alliance for Retired Americans; Britton DeFord*

SOPHIA LIN LAKIN
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400
(212) 519-7836
slakin@aclu.org

*(See next page for continuation of Counsel)*

*(Continuation of Counsel)*

THERESA JEANE LEE
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400
(212) 549-2500
tlee@aclu.org

TIMOTHY R. MACDONALD
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
(720) 402-3151
tmacdonald@aclu-co.org

SARA R. NEEL
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
(720) 402-3107
sneel@aclu-co.org

PATRICIA YAN
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, D.C. 20005
(202) 715-0839
pyan@aclu.org

*Counsel for Common Cause; Anne Keke; Kyle Giddings*

**INDEX OF JOINT APPENDIX**

**VOLUME 1 OF 2**

**DOCUMENT TITLE:** **PAGE**


District Court Docket Sheet,
*United States v. Griswold*, No. 1:25cv3967 (D. Colo.) ..................... 1

Complaint, filed December 11, 2025 (ECF 1) ........................................ 15

Motion for Order to Compel Records Demanded Pursuant to the
Civil Rights Act of 1960, filed December 11, 2025 (ECF 2)........... 23

Memorandum of Law in Support of the Request for Order to
Compel Production of Records Pursuant to
52 U.S.C. § 20701, *et seq*., filed December 11, 2025 (ECF 5) ........ 27

Exhibits to Memorandum in Support of Request for Order to
Compel Production of Records, filed December 11, 2025
(ECF 5-1) ......................................................................................... 38

Declaration of Eric Neff, filed December 11, 2025 (ECF 5-2) ................ 60

Secretary Griswold's Response to Motion to Compel,
filed February 10, 2026 (ECF 37) ................................................. 63

Exhibit A – Declaration of Nathan Borochoff-Porte,
filed February 10, 2026 (ECF 37-1) .............................................. 78

Exhibit B – Letter from Secretary Griswold to the DOJ,
dated May 27, 2025 (ECF 37-3) .................................................... 81

Exhibit C – Email Exchange Between the DOJ and Nathan
Borochoff-Porte, dated May 27, 2025 (ECF 37-4).......................... 84

Exhibit D – Email Confirmation of Shared Files,
dated May 27, 2025 (ECF 37-5) .................................................... 87

**DOCUMENT TITLE:** **PAGE**

Exhibit E – Email Exchange Between Chris Hayes and Nathan Borochoff-Porte, filed February 10, 2026 (ECF 37-6).................... 94

Exhibit G – Confidential Memorandum of Understanding (Colorado), filed February 10, 2026 (ECF 37-8) .......................... 102

Exhibit H – Letter from the DOJ to Senator Padilla, filed February 10, 2026 (ECF 37-9) ............................................ 112

Exhibit B – Declaration of Hilary Rudy, filed February 10, 2026 (ECF 37-10) ............................................................................ 117

Secretary Griswold's Motion to Dismiss, filed February 10, 2026 (ECF 40)................................................................................... 121

The United States' Memorandum in Opposition to the Motions to Dismiss, filed February 24, 2026 (ECF 49) ................................ 136

Declaration of Eric Neff in Support of the United States' Motion to Compel and in Opposition to the Motions to Dismiss, filed February 24, 2026 (ECF 49-1) ............................................ 171

Exhibit 5 – Memorandum of Understanding (Texas), filed February 24, 2026 (ECF 49-2) ............................................ 175

Exhibit 6 – Complaint (*U.S. v. State of Georgia and Cathy Cox*), filed February 24, 2026 (ECF 49-3) ............................................ 178

Exhibit 7 – Consent Judgment and Decree (*U.S. v. State of Georgia and Cathy Cox*), filed February 24, 2026 (ECF 49-4) ........................................................................... 184

Exhibit 8 – Consent Judgment and Order (*U.S. v. North Carolina State Board of Elections, et al.*), filed February 24, 2026 (ECF 49-5) ............................................ 192

**DOCUMENT TITLE:** **PAGE**


Exhibit 9 – Defendants' Second Status Report (*U.S. v. North Carolina State Board of Elections, et al.*), filed February 24, 2026 (ECF 49-6) ........................................... 206

Exhibit 13 – To Assure Pride and Confidence in the Electoral Process, filed February 24, 2026 (ECF 49-10) ............................ 209

Reply in Support of Motion to Dismiss, filed March 17, 2026 (ECF 57)................................................................................ 219

Exhibit A to Reply in Support of Motion to Dismiss (Supplemental Declaration of Hilary Rudy), filed March 17, 2026 (ECF 57-1) ................................................ 234

Exhibit 1 to Support Rudy Declaration (Electronic Registration Information Center: Technology and Security Overview), filed March 17, 2026 (ECF 57-2) ................................................ 237

Colorado Alliance for Retired Americans and Britton DeFord's Reply to Plaintiff's Response to Motion to Dismiss, filed March 18, 2026 (ECF 62) .................................................. 242

Brief of Amici Curiae Former Employees of the U.S. Department of Justice, filed June 23, 2026 (ECF 77) .................................... 252

District Court Order, filed July 8, 2026 (ECF 84) ............................... 268


**VOLUME 2 OF 2**


Motion to Dismiss of Common Cause, Kyle Giddings, and Anne Keke, filed July 10, 2026 (ECF 85) ................................... 282

Motion to Dismiss by Intervenors Colorado Alliance for Retired Americans and Britton DeFord, filed July 10, 2026 (ECF 86)................................................................................ 301

**DOCUMENT TITLE:** **PAGE**

Colorado Alliance for Retired Americans and Britton DeFord's Opposition to Motion for Order to Compel Records, filed July 10, 2026 (ECF 87) ........ 316

Colorado Alliance for Retired Americans and Britton DeFord's Supplemental Brief Supporting Motion to Dismiss, filed July 17, 2026 (ECF 94) ........ 331

United States of America's Response to Motion to Dismiss of Intervenor-Defendants Common Cause, Kyle Giddings, and Anne Keke, filed July 24, 2026 (ECF 98) ........ 336

Reply in Support of Motion to Dismiss of Common Cause, Kyle Giddings, and Anne Keke, filed July 31, 2026 (ECF 101) ........ 351

District Court Order, filed August 3, 2026 (ECF 102) ........ 362

Final Judgment, filed August 4, 2026 (ECF 103) ........ 376

Notice of Appeal, filed August 17, 2026 (ECF 105) ........ 378

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,
Plaintiff
v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,
Defendant.

**MOTION TO DISMISS OF COMMON CAUSE, KYLE GIDDINGS, AND ANNE KEKE**

**INTRODUCTION**

The United States seeks to compel the disclosure of sensitive personal voter data to which it is not entitled, using the civil rights laws as a pretext. Because the United States failed to disclose the basis and purpose of its request for the data, dismissal should be granted, and its attempt to summarily dispose of this case via an improper motion to compel should be rejected.[1]

Congress has repeatedly legislated to ensure that all eligible Americans can participate in free, fair, and secure elections. As the U.S. Department of Justice ("DOJ") has explained, Title III of the Civil Rights Act of 1960 ("Title III" or "CRA"), the provision invoked here, was designed to "secure a more effective protection of the right to vote."

[1] Intervenors' Motion to Dismiss responds to both Plaintiff's Complaint and its Motion to Compel. Rather than submit two separate responses to Plaintiff's filings, Intervenors have filed a single combined motion opposing the relief that Plaintiff requests. Intervenors' Motion is 18 pages and respectfully requests leave of court, to the extent necessary, to file an 18-page Motion to Dismiss.

U.S. Dep't of Just., C.R. Div., Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) and H.R. Rep. No. 86-956, at 7 (1959)).

The federal government's demand for Colorado's unredacted voter file—which contains sensitive personal information including driver's license numbers and/or Social Security numbers from millions of Coloradans—undermines the CRA's core purposes and is contrary to law. Releasing voter records without redaction and for purposes far afield from protecting voter access would only deter voter participation and undermine the right to vote. That is especially so here, where the United States has not fully and accurately set forth "the basis and the purpose" for its data request, as required by the very statute that it invokes. 52 U.S.C. § 20703. The Court should dismiss.

## BACKGROUND

Beginning in May 2025, Plaintiff United States, through its DOJ, began sending letters to election officials in at least forty states, making escalating demands for the production of statewide voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On May 12, 2025, DOJ sent a letter to the Colorado Secretary of State ("the Secretary"), based on "a complaint alleging noncompliance by [her] office with the duties outlined in 52 U.S.C. § 20507," demanding, "[a]ll records, as outlined in 52 U.S.C. § 20701, . . . ." Compl. ¶¶ 20–21; Pl.'s Ex. 1, Letter from Harmeet K. Dhillon to Jena

Griswold dated May 12, 2025, Dkt. No. 5-1 at 2 ("May 12 Letter"). This means the demand included "*all records and papers* which [came] into [the Secretary's] possession *relating to any application, registration*, . . . *or other act requisite to voting*" from "any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives" within the previous 22 months. 52 U.S.C. § 20701 (emphasis added).

On December 1, 2025, a DOJ attorney emailed the Secretary's offering an MOU that would functionally federalize the state's voter list maintenance, *see* Ex. 2, U.S. Dep't of Just., C.R. Div., Confidential Mem. of Understanding ("MOU"), and seeking the unredacted statewide voter list. *See* Compl. ¶ 24; Pl.'s Ex. 2, Email from Eric Neff to Deputy Sec'y of State Andrew Kline (Dec. 1, 2025), Dkt. No. 5-1 at 5 ("Neff Email"). He requested a response by the next day. *Id.* Colorado declined. *See* Pl.'s Ex. 3, Email from Deputy Sec'y of State Andrew Kline to Eric Neff (Dec. 2, 2025), Dkt. No. 5-1 at 7. This suit followed, one of at least twenty-two similar suits.

But the federal government's request does not appear to relate to voter roll list maintenance under the NVRA, 52 U.S.C. § 20507, the statute invoked in the May 12 Letter. According to reporting, federal employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. One recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the Administration's aims in these cases:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html. Additional reporting reveals self-proclaimed "election integrity" advocates who have previously sought to disenfranchise voters and overturn elections are involved in these efforts. *See* Mot. to Intervene as Defs. at 5 & n.4. In its letters to other states, DOJ also requested information focusing on vote by mail, history of felony convictions, and citizenship status.[2] Because the federal government has not provided a statutorily sufficient basis and purpose to support its request for Colorado's unredacted voter file, the relief should be denied and the Complaint dismissed.

**LEGAL STANDARD**

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P.

[2] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Ex. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Ex. A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

12(b)(6). A court need not accept a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," survive a motion to dismiss. *Id*. at 678–79. Courts will grant a motion to dismiss when, even if they "take all well-pleaded facts in the complaint as true, the plaintiffs have failed to present a plausible right to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). In assessing a complaint, courts can "consider documents subject to judicial notice, including . . . matters of public record" and "documents that are both central to the plaintiffs' claims and to which the plaintiffs refer in their complaint," in addition to the information within the four corners of the complaint. *Mbaku v. Bank of Am., Nat'l Ass'n*, No. 12-CV-00190-PAB-KLM, 2013 WL 425981, at *1 n.2 (D. Colo. Feb. 1, 2013) (citations omitted).

## ARGUMENT

### I. THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW.

The United States' demand for Colorado's full, unredacted voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). But the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The records request here is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Colorado's full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" in support of its records requests. *Second*, any records should be redacted to vindicate the privacy and constitutional rights of Colorado voters. Nothing in the CRA prevents the appropriate redaction of the sensitive personal information of voters. So Plaintiff is not entitled to its requested relief.

**A. The United States' Demand Fails to Meet the CRA's Requirements.**

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative." *Id*. § 20703. "This demand shall contain a statement of *the basis and the purpose therefor*." *Id*. (emphasis added).

The federal government's requests fail to provide "a statement of the basis and the purpose" sufficient to support disclosure of the unredacted voter file. *Id*. The Complaint

offers only the conclusory allegation: "The written demand 'contain[ed] a statement of the basis and the purpose therefor.'" Compl. ¶ 27 (citation omitted). And DOJ's letter referenced one complaint of supposed noncompliance with Section 8 of the NVRA to demand all records held by the Secretary, though not specifying the unredacted voter file now sought. Compl. ¶¶ 20–21; May 12 Letter. Neither the Complaint nor the letter alleges any evidence of anomalies or anything amiss with Colorado's list maintenance. *See* Compl.; May 12 Letter.

Contemporaneous case law immediately following Title III's enactment shows that the "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a violation. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III have consistently been treated as distinct concepts. *See id.*; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

Even if the United States had provided a proper "basis" for its demand—and it did not—it fails to explain any connection between its purported "purpose" and the request for the full and unredacted voter file. It does not explain why unredacted voter files are necessary to determine whether Colorado has "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507; Compl. ¶ 12. And in fact, such unredacted files are not necessary: A single snapshot of a state's voter list does not and could not provide enough information to determine if the state has made a

"reasonable effort" to remove ineligible voters under Section 8 of the NVRA. Compl. ¶ 12; 52 U.S.C. § 20507 (a)(4)(A)–(B). The NVRA and HAVA both leave the mechanisms for conducting list maintenance within the State's discretion. *See* 52 U.S.C. § 20507(a)(4), (c)(1); *id*. § 21083(a)(2)(A); *id*. § 21085. The procedures carried out by a state or locality establish its compliance; the unredacted voter file does not. Even were the United States to use voter file data to identify voters who had moved or died on Colorado's voter list at a single point in time, that would not amount to Colorado failing to comply with the "reasonable effort" required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible").

The basis and purpose requirements are critical safeguards that prevent the statute from being used as a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose requirements are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. In the context of administrative subpoenas, and specifically in assessing an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose," *United States v. Powell*, 379 U.S. 48, 57 (1964), and that such subpoenas "may not be so broad so as to be in the nature of a 'fishing expedition,'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). Such purpose requirements ensure

that the information sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation via administrative subpoena).

As such, even if some other voting records or some portion of the voter file were necessary to investigate Colorado's NVRA list maintenance compliance, May 12 Letter at 2, the United States has not provided any justification for why the full unredacted voter file is necessary. For decades, DOJ has neither sought nor required a full, unredacted voter file in its NVRA compliance investigations. The United States' failure to articulate the basis and the purpose for its demand is another reason it is insufficient as a matter of law.

Title III's basis and purpose requirement is especially important here, where public reporting and public, judicially noticeable documents show that the federal government did not disclose the main basis and purpose for its demand: building a national voter file for its own use, to be shared with other agencies for unlawful purposes. *See supra* 3–4. As Congress has never authorized the creation of such a database, its creation would violate the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

The federal government's failure to fully and accurately provide this information is fatal. Section 303 requires a statement of "the basis and the purpose" of a records request, and by twice using the definite article, the statute requires not just a basis or purpose among many, but the actual basis and purpose underlying the request. *See Niz-*

*Chavez v. Garland*, 593 U.S. 155, 165–166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and indefinite article). This is yet another ground for dismissal.

Setting aside this fatal deficiency, compliance with the NVRA and HAVA cannot be the true basis and purpose for these data requests based on the United States' own more recent statements to States in connection with the requests. Far from ensuring compliance with these laws, the MOU that the federal government proposed to Colorado, *see* Compl. ¶ 24; Neff Email, runs afoul of them, *see* MOU.[3]

The NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls, 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A), and the NVRA includes safeguards to protect voters from erroneous removal. But the MOU that the government proposed indicates multiple contemplated violations of those statutory requirements. First, it seeks to place authority to identify supposed ineligible voters in the hands of the federal government, contrary to statutory text, *id*. § 21085 (methods of complying with HAVA "left to the discretion of the State"). MOU at 2, 5. Second, its substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a way that would violate multiple protections of the NVRA, 52 U.S.C. § 20507. This now-public MOU shows that the United States' supposed purpose is not in compliance with federal law but aggrandizes authority to a federal

[3] In addition to incorporating the MOU by reference in its Complaint, Compl. ¶ 24, the United States represented in court that it intended for a number of States to sign an MOU as to its requests for state voter files. Hr'g Tr. at 72:21-73:8, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Dec. 4, 2025). That MOU has since become publicly available.

agency in ways contrary to federal law.

**B. Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter, so the Requested Relief Must Fail.**

Even if disclosure were appropriate, sensitive personal voter information would still be subject to redaction, which is not barred under Title III. Indeed, courts have found that redaction may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. The cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. § 20703; § 20507(i)(1). Courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See Olmos v. Holder*, 780 F.3d 1313, 1320–21 (10th Cir. 2015) ("the canon of constitutional avoidance . . . provides that when a particular construction would raise serious constitutional problems, the court will avoid that construction" (citation omitted)).

Federal courts have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found.,*

*Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality). Other courts have consistently recognized that the NVRA does not compel the release of sensitive information otherwise protected by federal or state laws. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), clarified on denial of reconsideration, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022). Colorado provides express protections from disclosure for social security numbers, driver's license numbers, and contact information of participants in the confidential address programs. Colo. Rev. Stat. § 1-2-302; *id.* §§ 24-30-2104, 2108, 2109.

Redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Long*, 682 F.3d at 339 (quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse." The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the

context of a Title III records request, multiple considerations which could be "[s]ignificant," including whether "official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III must be interpreted to avoid this unconstitutional burden. See *Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on Colorado voters and civic groups is present here. *See* Mot. to Intervene, Ex. 3, Decl. of Aly Belknap ¶¶ 6, 10–14; Ex. 4, Decl. of Kyle Giddings ¶¶ 1, 4–5; Ex. 5, Decl. of Dr. Anne R. Keke ¶¶ 6–11.

The same privacy and constitutional concerns warranting redactions under the NVRA apply equally to requests under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledge that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.[4]

## II. THE UNITED STATES IS NOT ENTITLED TO SUMMARY DISPOSITION AND ITS MOTION TO COMPEL SHOULD BE DENIED.

[4] The United States cites *Crook v. S.C. Election Comm*., No. 2025-CP-40-06539 (S.C. Ct. C.P. Oct. 1, 2025), a non-binding decision which briefly discussed Title III in dicta. Mot. to Compel Br. at 7-8. *Crook* did not address Intervenors' arguments about the basis-and-purpose requirement or the need to redact sensitive voter information, so carries little persuasive weight.

The Federal Rules of Civil Procedure, with limited exception, "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include the claim under Title III here. *See* Fed. R. Civ. P. 81. Ignoring these standards, the United States makes expansive claims that Title III universally "displaces the Federal Rules of Civil Procedure by creating a 'special statutory proceeding'" where "'[a]ll that is required is a simple statement by the Attorney General'" that "a written demand for Federal election records and papers covered by the statute [was made], explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Mem. in Supp. of United States' Request to Compel Prod. of Recs., Dkt. No. 5 ("Mot. to Compel Br.") at 2; *see also* Compl. ¶¶ 1–4. This is contrary to the Federal Rules, not contemplated by statute, and rests on misreading a single set of non-binding cases decided sixty plus years ago, in a different circuit and a drastically different context, including primarily *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See* Mot. to Compel Br.; *see also* Compl. ¶¶ 1–4.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue." Mot. to Compel Br. at 4 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit—which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[5] In these states, election officials and

---

[5] "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER,

others, including judges, notoriously used every possible means to block Black Americans from registering to vote.[6] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years cannot be divorced from its context.[7]

By contrast, here, more than sixty years later, the context of *this* request could not be more different. The United States has invoked the CRA for unprecedented purposes, to make sweeping demands for extensive voter data with no showing or claim of legal deficiencies or violations of rights, while making unprecedented demands for sensitive personal information—amid both the United States' own MOU and extensive reporting suggesting that the stated basis and purpose are pretextual, and that the data at issue is in fact being sought for unlawful ends.[8]

---

https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025).

[6] *See generally*, *e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

[7] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging that while "[t]he right of free examination of official records is the rule" under Title III there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

[8] *See, e.g.*, Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (citation and quotation marks omitted); *see also Powell*, 379 U.S. at 57–58 (holding that IRS Commissioner bears the burden to establish statutory requirements before enforcement of a tax subpoena). Just two years after *Lynd*, the Court held that proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA were governed by the Federal Rules. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604 (a) ("[T]he United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data[.]"), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.").

Even in *Lynd*, the court, in explaining its findings, noted that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. The

court also noted that the CRA authorizes jurisdiction by "appropriate process" to compel production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and before any federal laws had been passed to protect and constrain access to personal information,[9] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated that the "duty to issue protective orders" would arise for certain CRA records requests, *id.* at 230.

The unredacted voter file contains "confidential, private" personal identifying information of Colorado voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private" information, without *any* review of its statutorily required stated basis and purpose, would go even further than *Lynd* did—in a context where, very much unlike there, the basis and purpose are not inarguably clear but appear pretextual. The court presiding over the federal government's similar action in California has already recognized that the United States' motion to

[9] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Hr'g Tr. at 5:3–9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel, *id.*, and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114.

## CONCLUSION

The United States' Motion to Compel should be denied and the Complaint dismissed.

Dated: July 10, 2026 Respectfully submitted,

*/s/ Timothy R. Macdonald*

Timothy R. Macdonald, Bar No. 29180
Sara Neel, Bar No. 36904
American Civil Liberties Union of Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
(303) 777-5482
tmacdonald@aclu-co.org
sneel@aclu-co.org

Patricia J. Yan
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

Theresa J. Lee
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

*admission pending

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record.

*/s/ Timothy R. Macdonald*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

Defendant.

---

MOTION TO DISMISS BY INTERVENORS COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD

---

The U.S. Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration lists. DOJ has demanded that dozens of states turn over their full, unredacted voter lists, including highly sensitive voter information. Colorado law prohibits the Secretary from disclosing, or otherwise releasing, voters' social security numbers and driver's license or state-issued identification numbers, as well as other sensitive information. Colo. Rev. Stat. § 1-2-302(8). After Secretary Griswold refused DOJ's demand for sensitive voter data, it came to this Court to ask that it compel Colorado to produce its full voter registration list.

DOJ's Complaint relies on a single cause of action under Title III of the Civil Rights Act of 1960, which was enacted to combat infringement of the right to vote. Neither this (nor any other law) entitles DOJ to the data it seeks. DOJ must provide the "basis and

purpose" for any Title III request, but, here, it fails to provide basis and its purported purpose—to determine if Colorado is in compliance with the National Voter Registration Act's (NVRA) list maintenance procedures—is not a proper use for Title III. Even if it were, Title III does not require states to turn over highly confidential information, nor does it preempt state privacy laws. DOJ has also failed to comply with the Privacy Act, as it must to collect the private information it seeks, even if its demand was permissible.

DOJ has filed suit against 24 states and D.C. so far, in each seeking private voter data. Already, courts have dismissed DOJ's suits with prejudice, holding that its Title III claim was legally defective for many of the reasons stated here.

, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026);

, No. 6:25-cv-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026). This Court should likewise dismiss this Complaint with prejudice.

**BACKGROUND**

**I. Federal law has long made voter list maintenance a state responsibility, consistent with constitutional principles of federalism.**

The Constitution gives the States "responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." , 522 U.S. 67, 69 (1997); U.S. Const. art. I, § 4, cl. 1. Thus, states determine voter eligibility and maintain lists of voters, unless Congress clearly acts to preempt those responsibilities. , 570 U.S. 1, 17 (2013).

The federal laws that Congress has enacted relating to voter registration augment existing "state voter-registration systems," at 5, and confirm that states are the custodians of voter registration data. First, the NVRA, which was enacted in 1993 to serve

"two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls," , 584 U.S. 756, 761 (2018); 52 U.S.C. § 20501(b), expressly charges —not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists, § 20507(c)-(g). And, the Help America Vote Act (HAVA), which was enacted in the wake of the 2000 elections "to improve voting systems and voter access," , 120 F.4th 390, 394 (4th Cir. 2024), requires to create a "computerized statewide voter registration list," 52 U.S.C. § 21083(a)(1), and to "perform list maintenance" consistent with the NVRA. § 21083(a)(2). It, too, is clear that this list is to be "defined, maintained, and administered at the State level." § 21083(a)(1)(A). It also expressly commands that the "specific choices on the methods of complying with" its provisions "shall be left to the discretion of the State." § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved.
>
> This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31-32 (emphasis added).

## II. The Department of Justice seeks to amass state voter registration data.

In the spring of 2025, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including sensitive and personal information

about each registered voter. To date, DOJ has sent demands to more than forty states, with plans to make similar demands on all fifty.[1] The vast majority—including those led by Republican officials—have declined to turn over sensitive personal voter information.[2]

On May 12, 2025, DOJ sent a letter to Secretary Griswold, requesting information concerning Colorado's compliance with "the Voting Rights Act, 52 U.S.C. §20701." ECF No. 5-1, Ex. 1 ("May 12 Letter"); Compl. ¶ 20.[3] Section 20701 is not part of the Voting Rights Act.[4] It is part of the Civil Rights Act of 1960, and it obligates state election officials to "retain and preserve" for 22 months after a federal election, "all records and papers" that come into the official's possession "relating to any application, registration . . . or other act requisite to voting in such election." 52 U.S.C. § 20701. The letter asked the Secretary to turn over [a]ll records" covered by § 20701—in other words, record that had come into the possession of Colorado's chief election official for the last 22 months relating to voting applications or registrations. As its only justification for that sweeping demand, the letter stated that DOJ had "recently received a complaint alleging noncompliance by [the Secretary's] office" with the NVRA, and it sought these records to

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, , Brennan Ctr. for Just. (Feb. 6, 2026), https://perma.cc/SBW7-HDHR; Devlin Barrett & Nick Corasaniti, , N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] Martinez-Ochoa, O'Connor, & Berry, note 1.

[3] Documents cited in the complaint may be considered in deciding the motion to dismiss. , 861 F.3d 1081, 1103 (10th Cir. 2017).

[4] The letter contains other errors, including a reference to the "Commonwealth of Colorado," and a request for records from the federal election in .

"evaluat[e]" that complaint. No detail was provided about the alleged complaint. Nor did the letter specifically ask for (or even mention) Colorado's voter registration list.

DOJ dropped the matter for nearly seven months. Then, in December 2025, a DOJ trial attorney sent a short email to the Secretary's office, specifically requesting Colorado's "nonpublic, unredacted voter registration list." Compl. ¶ 24; ECF No. 5-1, Ex. 2 ("Dec. 1 Email"). The email did not mention any other records. The Secretary's office responded that it "will not be producing unredacted voter files." Compl. ¶ 25. DOJ then filed this lawsuit on December 11, 2025.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." , 556 U.S. 662, 678 (2009). Rather, "a plaintiff must offer specific factual allegations to support [its] claim."

, 656 F.3d 1210, 1214 (10th Cir. 2011).

## ARGUMENT

### I. DOJ's asserted "basis and purpose" are insufficient to support enforcement.

A demand for records under Title III must state "the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ contends that, so long as its written demand contains statement of its purported "basis and purpose"—no matter how threadbare—then it is entitled to compel the production of record covered by Title III, unhindered by judicial scrutiny. Compl. ¶ 4. That is wrong. Title III's "basis-and-purpose" requirement is

"not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." , 2026 WL 118807, at *9; , No. 25-mc-63, 2026 WL 33398, at *9 (D. Colo. Jan. 5, 2026) (R&R) ("A district court is not a rubber stamp for agency demands for the production of information." (cleaned up)). In this Circuit, courts apply a "reasonable relevance" standard to a government document demand. , 98 F.4th 1204, 1221 (10th Cir. 2024). Under that standard, the government must show (among other things) that its demand is "sufficiently limited in scope" and "relevant in purpose," , that the demand is reasonably tailored to its investigation. DOJ falls far short of that standard.

In fact, it is not even possible to DOJ's "basis and purpose" for its demand for Colorado's voter registration list. Compl. at 6, ¶ B. Although DOJ's May 12 Letter referenced a "complaint" and a desire to "evaluate" it, that letter never mentioned the voter list, instead it made a sweeping demand for document in the Secretary's possession covered by Title III. DOJ did not ask for the voter list until six months later, and that December 1 email said to link the voter list to the purported complaint.

But even if DOJ clearly linked its request for the voter list to the complaint mentioned in the May 12 Letter, it still fails to offer a "basis and purpose" for its demand. The sum total of DOJ's relevant statements are that it "received a complaint" that "alleg[ed]" "noncompliance" with a portion of the NVRA, and DOJ requested documents to "evaluat[e]" the complaint. Compl. ¶¶ 19-21; May 12 Ltr. Those statements do not explain how an unredacted copy of the voter registration list, containing sensitive information about every voter in Colorado, is reasonably tailored (or is even ) to

an appropriately scoped investigation. It is difficult to imagine the complaint that could justify such a wide-ranging demand, but imagine Colorado (and everyone else) must, because DOJ provided no information at all about that complaint in its correspondence. Nor does DOJ (in its filings here or correspondence with the Secretary) assert any substantive reason to suspect— —Colorado's list maintenance efforts. , 306 F.2d 222, 229 n.6 (DOJ stating in Title III demand it had information "tending to show" racial discrimination in voting in the target jurisdiction).

All that the NVRA requires is that a State conduct a "general program" that makes "reasonable" efforts to remove the names of ineligible voters who die or change their residence. 52 U.S.C. § 20507(a)(4). An unredacted voter registration list would tell DOJ nothing about the choices Colorado made in conducting its list maintenance efforts, the data would be outdated almost immediately, and even if DOJ were able to use it to identify voters who have moved or died since that single snapshot in time, it would not mean that Colorado failed to conduct "reasonable" list maintenance efforts. Moreover, given that DOJ has made near carbon copy demands for the unredacted voter files of at least 40 states based on nearly identical boilerplate claims and allegations, it is simply not plausible to conclude that DOJ's request for the unredacted voter file here is reasonably tailored to an investigation of Colorado specifically.

DOJ's failure to provide sufficient information to determine that its demand is reasonably tailored to its investigation requires dismissal of its Complaint. , , 903 F.3d 456, 459 (5th Cir. 2018) (refusing

enforcement when court could not determine if demand was "reasonably relevant" to the investigation and not "unreasonably broad");

, 854 F.3d 683, 690-91 (D.C. Cir. 2017) (similar); , 2026 WL 33398, at *3 (refusing enforcement where DOJ "never deigns to explain [its] investigation, let alone how the Subpoena is right-sized for it").[5]

## II. DOJ's demand is not supported by a proper purpose.

Although DOJ's Complaint and correspondence with the Secretary do not evince a discernible purpose for its demand for the voter file, Arg. § 1, in its , DOJ asserts that "the purpose . . . was to assess Colorado's compliance with the list maintenance requirements" of the NVRA and HAVA. ECF No. 5 at 2. Title III specifically requires the "basis and purpose" to be contained within the demand itself, 52 U.S.C. § 20703, making this post-hoc litigation explanation insufficient. But even if DOJ stated this "purpose" in its demand, the Complaint still must be dismissed because evaluating list maintenance efforts is not a valid purpose under Title III.

In interpreting Title III's "purpose" requirement, the Court must account for "'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" , 573 U.S. 302, 321 (2014) (quoting , 519 U.S. 337, 341 (1997)). The context makes plain that Title III was enacted to address a specific problem: DOJ's ability to protect the "right of all qualified

---

[5] DOJ's Complaint asks for an order to produce only Colorado's voter registration list. Compl. at 6, ¶ B. To the extent DOJ's complaint could be read to seek enforcement of DOJ's initial request for "all records" covered by Title III, that maximalist request would plainly fail the "reasonable relevance" standard. , 98 F.4th at 1221.

citizens to vote without discrimination on account of race" in accordance with the Civil Rights Act was stymied by the refusal of election officials to provide it with voting records. H.R. Rep. No. 86-956, at 7 (1959). Congress enacted Title III to assist DOJ in those investigations. , 306 F.2d at 228; , 187 F. Supp. 848, 853 (M.D. Ala. 1960). It has nothing to do with investigating the administrative voter registration list requirements that the NVRA and HAVA imposed decades later.

Prior enforcement of Title III confirms that DOJ, too, long understood that it was meant to be used for investigating the denial of voting rights. Shortly after the law's enactment, courts upheld DOJ demands that stated they were "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting" in the subject jurisdictions. , 208 F. Supp. 199, 200 (S.D. Miss. 1962); , 306 F.2d at 229 n.6 (same).[6]

The Court should reject DOJ's efforts to justify its demands with a purpose disconnected from the statutory scheme. , 2026 WL 118807, at *9 (holding that assessing NVRA compliance was an improper purpose for DOJ's Title III request); , 2026 WL 318402, at *10 (same); , No. MC-25-39, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena seeking

---

[6] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, , 306 F.2d at 226, those cases involved circumstances where Title III was unquestionably being used for its intended purpose: investigations into the denial of voting rights on account of race, and thus are fundamentally distinguishable.

private health information where DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress");

, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025) (similar).

**III. Title III does not prohibit the redaction of sensitive voter information.**

Even if investigating compliance with the NVRA or HAVA were a proper basis for a Title III demand, nothing in that law prohibits a state from redacting private voter information, including that protected by state law. Indeed, even , the principal case DOJ cites and relies on in its complaint, made clear that Title III is intended to reach "public records which ought ordinarily to be open to legitimate reasonable inspection," "confidential, private papers and effects." , 306 F.2d at 231. Moreover, Colorado law expressly prohibits the Secretary from disclosing sensitive information in voter files, including social security numbers and driver's license other identification numbers. Colo. Rev. Stat. § 1-2-302(8). Thus, for DOJ to be entitled to the voter registration list, it must show that Title III preempts these state-law privacy protections. It does not.

Courts presume that most federal laws do impliedly preempt state law. , 656 F.3d 1222, 1240-42 (10th Cir. 2011), , 569 U.S. 614 (2013). That presumption does not apply when Congress exercises its authority to "make or alter" state election regulations, , 92 F.4th 36, 51-52 (1st Cir. 2024), but because Title III addresses only the retention and disclosure of records—and does not target any state election regulations or practices—the presumption applies here. , 656 F.3d at 1242.

Title III's text does not indicate an intent to preempt state privacy laws that protect highly sensitive information and courts have repeatedly found that the NVRA (which DOJ claims it is seeking to enforce), does not prohibit states from redacting private voter data when complying with the NVRA's disclosure provisions. Title III and the NVRA employ similar language relating to the disclosure of state voting records. 52 U.S.C. § 20703 (Title III: covered voting records "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), 52 U.S.C. § 20507(i) (NVRA: states "shall make [covered voting records] available for public inspection"). As such, they should be interpreted consistently. , , 544 U.S. 228, 233 (2005) (plurality op.) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").[7]

Consistent with decisions of several of its sister circuits, the Tenth Circuit recently held that the NVRA does prohibit States from redacting precisely the information that DOJ seeks. , 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before

[7] DOJ also recognizes that Title III and the NVRA should be interpreted consistently. ECF. No. 5 at 8 n.3 (DOJ stating: "[a]lthough this Motion . . . is made under [Title III], the United States notes that the NVRA includes a similar requirement for production of Federal election records," and citing for the proposition that courts should presume that two similar statutes "have the same meaning" (citation omitted)). Notably, however, although the first wave of cases that DOJ brought against states attempting to obtain private voter data alleged claims under the NVRA and Title III (and HAVA, as well), DOJ has abandoned its NVRA and HAVA claims in its later-filed actions, including this one. ., , 2026 WL 118807, at *12-17; , 2026 WL 318402, at *5-7.

providing the voter data, the NVRA does not prohibit that limitation.").[8] There is no basis for finding otherwise when it comes to Title III.

Finally, if Congress believed that it was desirable for DOJ to be able to access a state's complete voter file to ensure that the state was complying with its list maintenance obligations, it would have done so in Congress did not do so. Instead, it created a mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but still permitted the redaction of sensitive voter data. , 160 F.4th at 1082 & 1083 n.14. As for HAVA, it contains no disclosure provision at all and instead confirms that voter registration lists must be "maintained" and "administered at the State level." 52 U.S.C. § 21083(a)(1)(A).

In short, it simply makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA, when the text of those statutes reflect a congressional judgment to preempt such laws.

[8] , 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); , 682 F.3d 331, 339 (4th Cir. 2012) (affirming order to redact social security numbers before disclosure under NVRA); , 996 F.3d 257, 268 (4th Cir. 2021) (holding the NVRA permits redactions to "protect sensitive information").

## IV. DOJ failed to comply with the Privacy Act, which also requires dismissal.

The Privacy Act independently prohibits DOJ from obtaining Colorado's voter registration list. It imposes obligations on any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." § 552a(a)(5); § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Colorado's voter registration list, which contains the names and identifiers of all registered voters in the state, is a "system of records." The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" that information, the obligations imposed by subsection (e) are triggered. § 552a(e)(4).

Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' , a System of Records Notice (SORN)." , No. 25-cv-3501, 2025 WL 3198970, at *2 (D.D.C. Nov. 17, 2025) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include the name and location of the system, the categories of individuals on whom records are maintained, the categories of records maintained, and all "routine uses" to which the system can be put.

In its proposed memorandum of understanding, DOJ stated that the SORN identified as “JUSTICE/CRT-001,” the “Central Civil Rights Division Index File and Associated Records,” provides “[t]he full list of routine uses” for DOJ’s “collection” of Colorado’s voter list. Compl. ¶ 24; Ex. A, at 4.[9] That SORN, however, cannot extend to a record such as a state voter list. , 2026 WL 118807, at *18. It states the categories of individuals covered by the system may include “[s]ubjects of investigations, victims, [and] potential witnesses,” in addition to other categories not relevant here. , 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It is not plausible to construe that language to countenance the collection of personally identifying information of registered voter in Colorado. Similarly, the SORN describes the categories of records in this system to “consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division.” It would be a startling reading of those terms to allow them to extend to a State’s complete voter list, which has never been maintained by the federal government.[10]

If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the United States, the Privacy Act requires that DOJ give the public adequate notice about its intention to do so, by publishing a SORN that accurately

---

[9] DOJ cited the memorandum of understanding in the Complaint, Compl. ¶ 24, and it was attached to the December 1 email, ECF No. 5-1, Ex. 2. DOJ did not attach it to its court filings, although it has since become publicly available, Martinez-Ochoa, O’Connor, & Berry, note 1, and Intervenors attach it here as Exhibit A.

[10] DOJ cites two other notices, but neither contains a routine use that is remotely applicable. 70 Fed. Reg. 43904 (July 20, 2005); 82 Fed. Reg. 24147 (May 25, 2017).

discloses the system of records it intends to create and the uses to which it will put that information. , 129 F.3d 519, 527 (10th Cir. 1997) (noting the Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the of existing systems of records" (citation omitted)); 5 U.S.C. § 552a(e)(4); § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

**CONCLUSION**

The Court should dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: July 10, 2026

/s/ Elisabeth C. Frost
***Elisabeth C. Frost***
***Joshua C. Abbuhl***
***Kevin R. Kowalewski***
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
E-mail: efrost@elias.law

***David D. Powell, Jr.***
***Lys Runnerstrom***
GARNETT POWELL MAXIMON BARLOW & FARBES
1125 17th St., Suite 2200
Denver, CO 80202
Telephone: (720) 252-7947
E-mail: david.powell@garnettlegalgroup.com
Attorneys for Intervenors

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

Defendant.

---

COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD'S OPPOSITION TO MOTION FOR ORDER TO COMPEL RECORDS, ECF No. 2

---

## INTRODUCTION

The Federal Rules of Civil Procedure lay out the lifecycle of a civil action. After the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. Over the course of that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to bypass that entire process by adjudicating a "motion for order to compel records" at the very start of the case. ECF No. 2. This may sound like an innocuous discovery motion, but it is no such thing—it would compel the final relief that DOJ seeks in this action. Nothing in the Federal

Rules or the statute underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to evade the Rules for its own convenience. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. The 1962 Fifth Circuit decision that DOJ relies on is irreconcilable with later Supreme Court precedent clarifying that in circumstances involving *identical* statutory language, "the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964).

As federal district courts in California and Oregon recently held in parallel litigation against those States, the very Civil Rights Act claim that DOJ replicates here is governed by the Federal Rules rather than some special procedure absent from the statute's text. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026). This Court should similarly reject DOJ's effort to short-circuit the ordinary litigation process, deny DOJ's motion, and allow this action to unfold as prescribed by the Federal Rules. Finally, procedure aside, DOJ is not entitled to the relief it seeks for the reasons stated in Intervenors' contemporaneously filed motion to dismiss.

## BACKGROUND[1]

DOJ filed this suit on December 11, 2025, seeking to compel Defendant Jena Griswold, Colorado's Secretary of State, to turn over Colorado's full, unredacted

[1] Intervenors' Motion to Dismiss further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Colorado and throughout the country.

statewide voter registration list.[2] *See generally* Compl., ECF No. 1. DOJ brings only a single claim, alleging a violation of Title III of the Civil Rights Act of 1960. *See id.* ¶¶ 26-28. DOJ initiated the process of seeking Colorado election records by informing Secretary Griswold that it had received a "complaint" about her office's compliance with a provision of the NVRA, and stating it was requesting records to "evaluate" that complaint. *See* ECF No. 5-1, Ex. 1. DOJ did not provide any information regarding the complaint that purportedly spurred the request. *Id.*

As Intervenors explain in their motion to dismiss, Title III cannot support DOJ's sweeping and novel demand. *See generally* Mot. to Dismiss. DOJ states no lawful basis and purpose for its demand. It says it is investigating compliance with the NVRA and HAVA, but it articulates no "basis" for believing Colorado—much less all 40-plus States of which DOJ is making this same demand—is violating those statutes, nor is investigating compliance with those statutes a lawful purpose for an investigation under Title III, because it falls outside its focus on constitutional voting rights. *See id.* Argument §§ I-II. Title III also does not preempt Colorado privacy protections, and DOJ also has

[2] In its first communication with Secretary Griswold, DOJ asked for "[a]ll records" covered by 52 U.S.C. § 20701, that is, *every* record Colorado's chief election official had come into possession of over the preceding 22 months "relating to any application, registration . . . or other act requisite to voting." In its present motion, DOJ technically asks the Court to enforce this plainly overbroad request (and to produce all such records in five days). Mot. to Compel Records, ECF No. 2 at 2. But DOJ's papers make clear that this request is an afterthought, and that its true target is Colorado's unredacted voter registration list. For example, DOJ's complaint asks for an order to produce the voter registration list only. Compl. at 6, ¶ B. The concluding paragraph of DOJ's memorandum in support of its motion to compel records likewise asks only for an order to produce the voter registration list and does not mention any other records. ECF No. 5 at 10.

failed to comply with the federal privacy laws that it must in order to collect the private information it demands, even if it were otherwise entitled to it. *See id.* Argument §§ III-IV.

In its motion to compel, DOJ asks the Court to ignore those issues—and others raised in the motions to dismiss—and skip straight to compelling production of the data that DOJ demands. Specifically, it asks the Court to "[o]rder Defendant to produce an electronic copy of the Colorado [S]tatewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. for Order to Compel at 2, ECF No. 2.

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action, like any other. Nothing in Title III's text supports DOJ's contention that Title III "displaces" the Federal Rules or authorizes a "special statutory proceeding." Mem. in Support of Mot. for Order to Compel at 8, ECF No. 5. DOJ is also wrong to minimize the Court's role in reviewing the lawfulness of the relief it seeks. The Court should deny its motion and allow this litigation to unfold under the normal course—starting with the motions to dismiss.

### I. The Federal Rules govern DOJ's claim under the Civil Rights Act

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve Title III. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents

through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if Title III document requests could be characterized as a subpoena, they would still be subject to the Federal Rules, as none of the sources listed in Rule 81(a)(5) provide an exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings for that circumstance, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in Title III.

As two federal courts have now agreed, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *Weber*, 2026 WL 118807, at *8; *see Oregon,* 2026 WL 318402, at *8 (consulting Title III's text). DOJ identifies not a word in Title III that supports its demand for an immediate grant of the final relief it seeks in this case. Nor could it. Title III says only that district courts "shall have jurisdiction *by appropriate process* to compel the production" of the documents sought. 52 U.S.C. § 20705 (emphasis added). Nowhere does it suggest that the "appropriate process" should be something other than that which federal courts ordinarily use to resolve contested cases. *Weber*, 2026 WL 118807, at *8 (exercising "appropriate process" by applying the Federal Rules of Civil Procedure). And as the Supreme Court has held, where a statute of this type "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Powell*, 379 U.S. at 58 n.18 (emphasis added). *Powell* is directly on point, because the relevant text of the statute in *Powell* was *identical* to the relevant text of Section 20705: both state that the federal courts "shall have jurisdiction by appropriate process to compel" the

production sought. 26 U.S.C. § 7604(a). "Accordingly," in a Title III case, "the Court applies the Federal Rules of Civil Procedure as in any other case." *Oregon*, 2026 WL 318402, at *8; *see also Weber*, 2026 WL 118807, at *8.

DOJ's contrary argument relies on a Fifth Circuit decision from 1962, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). But *Lynd* is irreconcilable with *Powell*, which the Supreme Court decided two years later. *Oregon*, 2026 WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*."); *see also Weber*, 2026 WL 118807, at *8 n.15. Where *Lynd* says that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," 306 F.2d at 225-26, *Powell* rejects that conclusion—again, construing a statute with identical text to that found in Title III—to hold that "the Federal Rules of Civil Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010))). This Court should follow *Powell.*

## II. The Court must conduct meaningful review of DOJ's demand.

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to enforce a document request, the government must show its investigation "will be conducted pursuant to a legitimate

purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *United States v. Edwards*, 172 F. App'x 844, 846 (10th Cir. 2006) (discussing *Powell* and observing that a summons recipient may rebut government's prima facie case); *Jewell v. United States,* 749 F.3d 1295, 1297 (10th Cir. 2014) (applying *Powell* to quash summonses); *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024) (discussing "reasonable relevance" standard in evaluating administrative subpoena); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347-50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458-60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689-90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under relevant statutory scheme, rejecting notion that "the

Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment. *See Oregon*, 2026 WL 318402, at *8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place.").

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "purpose" under 52 U.S.C. § 20703, as eliminating racial discrimination in voting was the explicit purpose of Title III, *see State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). And there could be no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had overwhelmingly been excluded from the voter rolls. *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white

person who had been rejected"). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231. It further noted that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would need to adjudicate that issue. *Id.* at 226.

None of the factors that made *Lynd* such an easy case are present here. Here, DOJ seeks sensitive and private information that is regularly protected from disclosure and DOJ's avowed purpose for its request falls outside of Title III, because—even by DOJ's own telling—the demand relates not to the protection of constitutional voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms (specifically, the NVRA and HAVA). *See* Mot. to Dismiss Argument § II.[3] That leads to a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to *impede* voting rights, not protect them. *See infra* 13-14. And, even if DOJ could use Title

[3] Notably, although DOJ alleged claims under the NVRA and HAVA in its first set of otherwise identical cases against states seeking the same relief it seeks here, DOJ has abandoned those claims in later iterations of these cases, including this one against Colorado. *See* Intervenors' Mot. to Dismiss at 11 n.7. In doing so, DOJ has effectively conceded that those statutes do not entitle it to the relief it seeks, and concocted instead an ill-advised theory that Title III operates as a catch-all authorizing any demand by DOJ for any information related to voting for any purpose, without any place for judicial review. For the reasons discussed here (and in greater detail in Intervenors' motion to dismiss), this argument is not well founded.

III to investigate list maintenance issues governed by the NVRA and HAVA (and there is good reason to find that it cannot), DOJ has provided no reason to believe that it has a valid basis to suspect that there are NVRA and HAVA violations in Colorado, much less in all 40-plus States from which DOJ has demanded similar records. Finally, the records that DOJ seeks here involve confidential, not public, information. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire State of Colorado, and nearly every other State, too.

Federal courts have recognized as much by adjudicating DOJ's parallel cases seeking the same type of private voter data under the Federal Rules—and holding that DOJ's Title III claim cannot survive its mandatory encounter with Rule 12. After the California court provided for appropriate process—full briefing of motions to dismiss under Rule 12—the court dismissed DOJ's Title III claim with prejudice. *Weber*, 2026 WL 118807, at *20. So did the Oregon court. *Oregon*, 2026 WL 318402, at *13.[4] Many more courts have proceeded with entertaining Rule 12 motions: defendants' and intervenors' motions to dismiss are fully briefed in Maine, New York, Rhode Island, and Minnesota

[4] Both the California and Oregon courts also dismissed DOJ's NVRA and HAVA claims. *Weber*, 2026 WL 118807, at *14-16; *Oregon*, 2026 WL 318402, at *6-7. Curiously, DOJ did not file a motion to compel related to its Title III claim in Oregon. *See id.* at *8 n.1 ("Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation.").

with briefing ongoing in numerous additional states.[5] With briefing already underway before this Court, there is no reason to switch gears and deviate from the procedures provided by the Federal Rules.

DOJ has called attention to an order that instructed Connecticut's Secretary of State to show cause why the court should not order the release of the State's voter registration list, but it does nothing to help DOJ's position. ECF No. 29; *see* Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 8, 2026), ECF No. 10. For one, it stands alone among the 25 cases that DOJ has filed across the country, and was issued before the defendant in that case (the Secretary of State of Connecticut) had appeared, or for that matter, before she was served.[6] *See, e.g.*, Summonses Returned Executed, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 12, 2026), ECF Nos. 20-21; Notices of Appearance, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 13, 2026), ECF Nos. 25-26. As the Connecticut court soon clarified in a follow-up order, "the parties disagree as to the appropriate procedural posture of this case," and the court made clear it had not decided if it accepted DOJ's arguments, and "the dispute shall be fully briefed followed by a hearing at which oral argument shall be had." Order, *United States v. Thomas*, No.

---

[5] *See, e.g.*, *United States v. Bellows*, No. 1:25-CV-00468 (D. Me. Nov. 21, 2025), ECF No. 38; *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Jan. 20, 2026), ECF No. 86; *United States v. Amore*, 1:25-cv-00639-MSM-PAS (D.R.I. Feb. 3, 2026), ECF No. 37; *United States v. Simon*, 0:25-cv-03761-KMM-EMB, ECF No. 114 (D. Minn. Feb. 6, 2026).

[6] Intervenor Colorado Alliance for Retired Americans is familiar with these proceedings: its sister organization, the Connecticut Alliance for Retired Americans, was granted intervention as a defendant in that case, Order, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 13, 2026), ECF No. 23.

3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30. In other words, as the California court correctly observed, the Connecticut order "amounts to nothing more than a scheduling order delineating a briefing schedule."[7] *Weber*, 2026 WL 118807, at *19 (addressing DOJ's parallel notice of supplemental authority in that case).

In sum, this Court should reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," Mem. in Support of Mot. for Order to Compel Prod. at 8, and apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss before proceeding to any necessary discovery period and summary judgment briefing.

## III. The pending motions to dismiss are the proper vehicle for resolving this case.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion for an order to compel production of records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: "to test the sufficiency of the plaintiff's complaint." *Sensoria, LLC v. Kaweske,* 548 F. Supp. 3d 1011, 1023 (D. Colo. 2021). The Federal Rules likewise set an early deadline for motions to dismiss because

---

[7] The Connecticut orders also reflect some important oversights. In addition to initially conflating the Voting Rights Act with the Civil Rights Act, the court did not address the Supreme Court's controlling decision in *Powell*, and it analogized Title III to 28 U.S.C. § 1782, a provision with very different text that does in fact specify a different procedure, unlike Title III and the statute at issue in *Powell*, both of which refer only to "appropriate process." Order, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30; Notice, *Thomas*, 3:26-cv-00021-KAD (Jan. 15, 2026), ECF No. 33 ("With apologies, ECF No. 30 is hereby amended to reflect the Court's understanding that Plaintiff has invoked the Civil Rights Act of 1960, not the Voting Rights Act as erroneously indicated.").

resolving "issues at this early stage potentially could spare the parties (including Plaintiff) unnecessary litigation burden." *Lehmann v. Zehner*, No. 22-CV-00204, 2022 WL 22962900, at *3 (D. Colo. July 25, 2022); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (observing that Rule 12 pleading requirements exist to "avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim") (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1077 (10th Cir. 2008)) (internal quotations omitted)). Accordingly, Rule 12(b)(6) motions are meant to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As explained more fully in Intervenors' motion to dismiss, DOJ asserts novel authority to compel the production of an unredacted copy of Colorado's complete statewide voter registration list, without any valid statutory basis to do so. *See* Mot. to Dismiss Argument §§ I-IV. In light of the fatal legal deficiencies in DOJ's complaint, resolving its motion to compel first would flip the process backwards, depriving Intervenors and the Secretary of State of their right and opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper vehicle to resolve DOJ's claim. *See Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *8.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery into the basis and purpose for DOJ's demand. If DOJ can survive the motion to dismiss, it is apparent that there are potential disputes of material fact at the heart of this case. DOJ says the purpose of its demand is to investigate a

complaint against the Secretary. But contrast that representation with the alarming picture painted by reporting and the words of the administration's officials. DOJ reportedly seeks to create a national voter list, an unprecedented scheme not authorized by law.[8] Assistant Attorney General Dhillon says that DOJ intends to use the information it demands to compel removal of *hundreds of thousands* of voters from the rolls.[9] The President has said that he would like the federal government to insert itself deep into the States' election procedures and even "take over" that process.[10] That would be in direct conflict with the Constitution, every State constitution, the NVRA, HAVA, and other laws. This initiative is clearly a priority: Attorney General Bondi sent a letter to Minnesota indicating that ICE would stop operations there if Minnesota provided DOJ full "access" to its voter rolls (among other demands).[11]

These facts—which make it rather implausible that this is simply a case about DOJ monitoring Colorado's compliance with list maintenance procedures—go to the core of DOJ's claim. Granting DOJ the final relief it seeks before the Secretary and Intervenors

---

[8] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[9] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://x.com/AAGDhillon/status/2001659823335616795 ("You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[10] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to Nationalize Elections*, N.Y. Times (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

[11] Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html.

have the opportunity to conduct discovery relevant to this and other factual disputes would be premature and contrary to the well-established practices that govern civil litigation. *Cf. Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) ("[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).

## CONCLUSION

The Court should deny the motion to compel.

Respectfully submitted,

Dated: July 10, 2026

/s/ Elisabeth C. Frost
***Elisabeth C. Frost***
***Joshua C. Abbuhl***
***Kevin R. Kowalewski***
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
efrost@elias.law

***David D. Powell, Jr.***
***Lys Runnerstrom***
GARNETT POWELL MAXIMON BARLOW & FARBES
1125 17th St., Suite 2200
Denver, CO 80202
Telephone: (720) 252-7947
E-mail: david.powell@garnettlegalgroup.com
Attorneys for Intervenors

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

Defendant,

COLORADO ALLIANCE FOR RETIRED AMERICANS and BRITTON DEFORD,

Intervenor-Defendants,

and

COMMON CAUSE, KYLE GIDDINGS, and ANNE KEKE,

Intervenor-Defendants.

---

COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD'S SUPPLEMENTAL BRIEF SUPPORTING MOTION TO DISMISS, ECF No. 86

---

Fifteen district courts and a court of appeals have spoken unanimously: the U.S. Department of Justice's (DOJ) demands for unredacted statewide voter registration lists are invalid.[1] As many of those courts have explained, DOJ's claim seeking Colorado's

[1] *See United States v. Toulouse Oliver*, No. 25-cv-01193, 2026 WL 2031479 (D.N.M. July 14, 2026); *United States v. Koski*, No. 3:26-cv-00042, 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 2:26-cv-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026); *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026

unredacted list fails at the outset because the list is not a record that "come[s] into [] possession" of state election officials, and it therefore is not subject to production under Title III of the Civil Rights Act of 1960. 52 U.S.C. § 20701. This ordinary meaning is confirmed because any other interpretation would place Title III in irreconcilable conflict with the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA").

Although Title III's text is dispositive, parallel court decisions demonstrate that DOJ's claim also fails for at least three other independent reasons: (1) DOJ's demand does not state a factual basis; (2) DOJ's demand does not state a valid purpose; and (3) DOJ has not complied with the Privacy Act. This Court should dismiss the Complaint with prejudice. *See* ECF No. 86 ("Alliance MTD"); ECF No. 62 ("Alliance Reply").

## ARGUMENT

### I. Colorado's statewide voter registration list is not subject to production under Title III.

Title III requires a state election officer to "retain and preserve … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting[.]" 52 U.S.C. § 20701. Only such "records" or "papers" are subject to a proper demand by the Attorney General. *Id.* § 20703.

---

WL 1850016 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. CV SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, 2026 WL 1430354 (W.D. Wis. May 21, 2026); *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Fontes*, No. 2:26-cv-66, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, No. 25-cv-639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Benson*, 819 F.Supp.3d 753 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026); *United States v. Oregon*, No. 6:25-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Weber*, 816 F.Supp.3d 1168 (C.D. Cal. 2026).

As nine courts have explained in dismissing (or affirming dismissal of) parallel claims, Colorado's statewide voter registration list is outside the scope of Title III because it is *created* by state officials and thus does not "come into" their "possession."[2] *See Benson*, 179 F.4th at 478-81. Title III does not define "[c]ome into … possession", *id.,* and "[w]hen a term is undefined, we must look to its ordinary meaning," *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024). Here, Colorado generates the statewide voter registration list internally, and "[a]n ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained." *Benson*, 179 F.4th at 478-81.

Other textual indicators buttress that ordinary meaning. For one, "[t]he canon against surplusage indicates that we generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018). Reading "come into … possession" to limit "records" to externally generated documents ensures that the term chosen by Congress is not relegated to surplusage. *Benson*, 179 F.4th at 480-81. For another, the meaning of "come into possession" is clarified by surrounding text that situates such "records" as "relating to any application, registration, payment of poll tax, or other act requisite, to voting in such election," which are the sorts of records that officials "obtain … from third parties" rather than creating. *Id.* at 476.

---

[2] *Benson*, 179 F.4th at 478-81; *Koski*, 2026 WL 2032532, at *4-6; *Bd. of Elections*, 2026 WL 1999921, at *8-11; *Scanlan*, 2026 WL 1864054, at *4-6; *Schmidt*, 2026 WL 1850016, at *1-2; *DeMarinis*, 2026 1780586, at *4-6; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3-5; *Bellows*, 2026 WL 1430481, at *6-7; *Fontes*, 2026 WL 1177244, at *3-7.

In addition, holding that Colorado's voter registration list is subject to Title III would subject election officials to irreconcilable obligations. Under the NVRA and HAVA, election officials are required to routinely update the list. 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A). But if the list were subject to Title III, election officials would be required to "preserve" it and would be subject to criminal penalties if they "alter[ed]" it. 52 U.S.C. §§ 20701, 20702; *see, e.g.*, *Bd. of Elections*, 2026 WL 1999921, at *9 (discussing this "direct[] conflict"). Thus, if Colorado's list falls under Title III, Colorado officials could not comply with the NVRA and HAVA without risking criminal prosecution for "alter[ing]" a covered "record." *See, e.g., DeMarinis*, 2026 WL 1780586, at *4-6 ("This Court will not read § 20701 to produce such an absurd result."). Practical considerations compel the same conclusion: if Title III covered Colorado's list, Colorado would be obliged to somehow retain and preserve every single iteration of a constantly-updated database with millions of entries. *See Scanlan*, 2026 WL 1864054 at *5. It is not plausible that Congress intended to issue such an infeasible command.

## II. DOJ failed to provide a "basis" for its demand.

Alternatively, or as an additional holding, this Court should join nine others in dismissing because DOJ's demand lacks a valid factual "basis."[3] 52 U.S.C. § 20703. DOJ's May 12 letter alleges entirely unspecified "noncompliance" with the NVRA and DOJ's later email contains no basis at all. *See* Alliance Reply at 3-4. Because DOJ's basis

---

[3] *See Benson*, 179 F.4th at 483; *see also Toulouse Oliver*, 2026 WL 2031479, at *10; *Warner*, 2026 WL 2018877, at *4-6; *Scanlan*, 2026 WL 1864054, at *7-8; *Schmidt*, 2026 WL 1850016, at *2; *Amore*, 2026 WL 1040637, at *5-6, *Galvin*, 2026 WL 972129, at *4-6; *Oregon*, 2026 WL 318402, at *8-9; *Weber*, 816 F.Supp.3d at 1184.

must be found in a single written demand, *Benson*, 179 F.4th at 483, this deficiency cannot be "cur[ed]," *Toulouse Oliver*, 2026 WL 2031479, at *9.

**III. DOJ failed to provide a valid "purpose" for its demand.**

DOJ's purported purpose, evaluating list maintenance, is entirely absent from its May 12 letter. Alliance Reply at 5. In any event, seven courts have held that auditing list maintenance is not a proper purpose under Title III, or that DOJ has failed to explain how an unredacted voter file is related to that purpose.[4] This Court should do the same.

**IV. DOJ's collection of Colorado's voter list would violate the Privacy Act.**

Finally, the Privacy Act prohibits DOJ from obtaining Colorado's voter registration list unless DOJ publishes a "System of Records Notice (SORN)" that covers the list. *See Weber*, 816 F.Supp.3d at 1193-94 (dismissing for this reason); Alliance MTD at 9-10.

**CONCLUSION**

This Court should dismiss the Complaint with prejudice

Respectfully submitted,

Dated: July 17, 2026

***David D. Powell, Jr.***
***Lys Runnerstrom***
GARNETT POWELL MAXIMON BARLOW & FARBES
1125 17th St., Suite 2200
Denver, CO 80202
Telephone: (720) 252-7947
E-mail: david.powell@garnettlegalgroup.com

/s/ Elisabeth C. Frost
***Elisabeth C. Frost***
***Joshua C. Abbuhl***
***Kevin R. Kowalewski***
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
E-mail: efrost@elias.law
Attorneys for Alliance Intervenors

[4] *See Warner*, 2026 WL 2018877, at *4-6; *Scanlan*, 2026 WL 1864054, at *7-8; *Schmidt*, 2026 WL 1850016, at *2; *Bellows*, 2026 WL 1430481, at *7-10; *Amore*, 2026 WL 1040637, at *6, *Oregon*, 2026 WL 318402, at *9-10; *Weber*, 816 F.Supp.3d at 1183-84.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JENA GRISWOLD, *et al*.,<br><br>Defendants. | Case No. 1:25-cv-03967-PAB-TPO |

**UNITED STATES OF AMERICA'S RESPONSE TO MOTION TO DISMISS OF INTERVENOR-DEFENDANTS COMMON CAUSE, KYLE GIDDINGS, AND ANNE KEKE (ECF 85)**

## INTRODUCTION

Plaintiff the United States of America respectfully submits this memorandum of law in response to Intervenor-Defendants Common Cause, Kyle Giddings and Anne Keke's ("Common Cause") Motion to Dismiss (ECF 85).

The United States Department of Justice (DOJ) brought this action against Colorado Secretary of State Jena Griswold, alleging that she violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. § 20701 *et seq.*, which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the DOJ alleged that Secretary Griswold violated the CRA by refusing the Attorney General's demand for all records required to be retained under Section 301 of that act, 52 U.S.C. § 20701, including an electronic, unredacted copy of Colorado's Statewide Voter Registration List (SVRL), to determine whether Colorado is complying with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq.*

**BACKGROUND**

Congress passed the CRA to strengthen the 1957 Civil Rights Act. *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in CRA lawsuits and "authorized courts to register voters in areas of systematic discrimination." *Id.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Id.*; *see* 52 U.S.C. § 20701 *et seq.*

Title III requires state election officials to retain records requisite to voting in elections and allows the Attorney General to demand those records. 52 U.S.C. § 20701 *et seq.* Although Congress enacted the CRA with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers . . . come into [an election officers'] possession," 52 U.S.C. § 20701. However, in doing so, Congress did not alter or limit the broad record-retention and record-disclosure requirements of Title III.

Relevant here are the NVRA and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901 *et seq.*, which provide the federal government with statutory authority to ensure that States are overseeing federal elections in a fair and honest manner to "protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The NVRA requires each State to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . change in the residence of the registrant . . . ." 52 U.S.C. § 20507(a)(4).

Of highest importance to this litigation, HAVA requires states to create and maintain a "computerized" SVRL that "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii); *see also* Colo. Rev. Stat.

§ 1-2-201(1). Federal elections cannot occur in Colorado without the SVRL. It is the single most important document the state chief election official maintains requisite to a federal election. Because of this, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. § 21083(a)(1)(A) and (a)(2)(A). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers, namely, an applicant's "driver's license number" if he or she has a valid one, "the last 4 digits of the applicant's social security number ('SSN4')" if the applicant has no driver's license, or, if the applicant has neither a driver's license nor an SSN4, a state-assigned "unique identifying number." 52 U.S.C. § 21083(a)(5)(A)(i)–(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii).

On May 12, 2025, acting pursuant to the United States' authority to enforce these federal election statutes, the DOJ sent Secretary Griswold, Colorado's chief elections officer, a letter ("May 12 Letter") demanding a copy of all federal election records as outlined in Sections 301 and 303 of the CRA, 52 U.S.C. §§ 20701, 20703. *See* May 12 Letter, ECF 5-1, Ex. 1. As the May 12 Letter states, the DOJ sought the specified election records based on a complaint alleging Colorado was not complying with the NVRA's voter registration requirements. The May 12 Letter's stated purpose was "[t]o assist [the DOJ's] efforts in evaluating the complaint." *Id.* Secretary Griswold refused to produce all the records the United States demanded, including the SVRL.[1]

[1] Secretary Griswold did respond to DOJ on May 27, 2025, providing the public portion of Colorado's SVRL. However, DOJ needs the non-public portions of the SVRL, such as a voter's driver's license number or SSN4, *see* 52 U.S.C. § 21083(a)(5), to ensure that a voter is not, for instance, deceased.

## ARGUMENT

### I. The DOJ's demand for an electronic, unredacted copy of Colorado's SVRL, which federal law requires Colorado to generate and maintain, satisfies Title III.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. § 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying," provided the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. If that written demand has been made, and the state or local election officer has rejected it, the Attorney General may seek an order from the federal court requiring production. 52 U.S.C. § 20705.

Common Cause's primary argument is that the United States' demand for an electronic, unredacted copy of Colorado's SVRL, along with other records, failed to state an adequate basis and purpose. ECF 85 at 5–11.

#### A. Courts play a limited role in assessing the Attorney General's demand under Title III.

The Attorney General's filing of an application for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Rather, a Title III proceeding is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.* For this reason, such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225–26; *see also Gallion*,

187 F. Supp. at 854 (comparing applications to compel to actions by the SEC in which procedural rules "are made specifically inapplicable to investigations"). A Title III proceeding differs from other civil actions because its "chief purpose" is to facilitate *pre-suit* investigation of state and local election activities that otherwise would escape federal oversight. *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960). In stark contrast, "[t]he chief purpose of Fed. R. Civ. P. 34 . . . is to give a party litigant the right to have records produced *after* suit has been filed." *Id.* (emphasis added). Therefore, there is no discovery or trial related to the Attorney General's Title III demand. "There is no place for a motion for a bill of particulars or for a more definite statement . . . . There is no place for any other procedural device or maneuver . . . to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226. In other words, in the narrow context of elections law compliance, Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950); *see also United States v. Powell*, 379 U.S. 48, 57 (1964).

Common Cause asserts that the Federal Rules of Civil Procedure must govern these proceedings, comparing this proceeding to one seeking to enforce a subpoena. *See, e.g.*, ECF 85 at 8–9, 16. However, the United States has not issued a subpoena; it has made a "demand" under Title III. 52 U.S.C. § 20703. While a demand is similar in some ways to a subpoena, the word "demand" is a term of art with a specific meaning differing from the word "subpoena." A "demand" is "an imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or abstain from some act." *Black's Law Dictionary* 516 (4th ed. 1951). It "presupposes that there is no defense or doubt upon question of right." *Id.*

*Black's* uses as an example a "demand for extradition." *Id.* Federal interstate extradition requires the state executive authority to produce a fugitive whenever another state executive authority demands the fugitive by producing an indictment or an affidavit made before a magistrate charging the person demanded with a crime. *See* 18 U.S.C. § 3182. If extradition is challenged, court involvement is limited to determining, in a summary proceeding, if the statute has been facially followed. *See California v. Super. Ct. of Cal.,* 482 U.S. 400, 407–08 (1987) (holding "[t]he courts of asylum States may do no more than ascertain whether the requisites of the Extradition Act have been met.").

Likewise, in reviewing a Title III "demand," courts are restricted to only determining if the law has been followed on its face: (1) Did the Attorney General make a written demand for federal election records stating a basis and purpose?; (2) Was that demand made to one or more "officer[s] of election" who were custodians of records requisite to voting in federal elections?; (3) Did the "officer[s] of election" fail or refuse to make the demanded federal election records "available for inspection, reproduction, and copying"?; and (4) Did the Attorney General make "a simple statement" to the Court that he satisfied the foregoing requirements? *See Lynd*, 306 F.2d at 225–26. If the United States has facially complied with the statute, Secretary Griswold must be ordered to produce the records demanded.

Common Cause's reliance on *United States v. Powell* is misplaced. *See* ECF 85 at 16. Common Cause argues that because *Lynd* preceded *Powell*, and because *Powell* applied the rules of civil procedure, *Lynd* was wrongly decided on this point. *Id.* The *Powell* Court explained that because section 7604(b) of the Internal Revenue Code ("IRC") "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply . . . ." *United States v. Powell*, 379 U.S. at 58 n.18. But *Powell's* quoted language

refers to a process expressly provided in the IRC that is absent from the CRA. Section 7605(b) of the IRC prohibits the Government from subjecting a taxpayer "to unnecessary examination or investigations." 26 U.S.C. § 7605(b). *Powell* explained that where a court is asked to enforce an administrative summons under the IRC, judicial inquiry is appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry, however, is only permitted because section 7605(b) specifically authorizes it. *Powell,* 379 U.S. at 52 (quoting 26 U.S.C. § 7605(b)). The Supreme Court later acknowledged that "post-*Powell* cases . . . are clearly and consistently to the effect that . . . *Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson v. United States*, 400 U.S. 517, 529 (1971), *superseded by statute as recognized in Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 443–44 (2023). The DOJ satisfied that standard: Secretary Griswold was notified of and has responded to the DOJ's Motion to Compel.

On a motion to dismiss, this Court must draw all reasonable inferences in favor of the United States. *Brown v. City of Tulsa*, 124 F.4th 1251, 1255 n.1 (10th Cir. 2025). Taking as true the allegations in the United States' Complaint, the United States has satisfied each of the four elements of its Title III action.

**B. The DOJ provided a valid basis for its demand.**

Nothing in Title III authorizes courts to second-guess or probe the sufficiency or sincerity of the Attorney General's stated basis. Indeed, Title III provides no meaningful standards that permit such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599–600 (1988); *Heckler v.*

*Chaney*, 470 U.S. 821, 830 (1985). Title III identifies only the scope of the "records and papers" the Attorney General may demand, 52 U.S.C. § 20701, and a requirement that the Attorney General communicate "the basis and the purpose" for the demand, 52 U.S.C. § 20703. There is simply not any standard against which to measure the stated basis and purpose. Instead, the Attorney General need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added); *see, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) ("The purpose of this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."). As *Lynd* explained, "[t]here is no place for any . . . procedural device or maneuver . . . to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226. Accordingly, the only "matters open for [court] determination" when a recipient challenges the Attorney General's demand are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Additionally, if "a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within this broad statutory classification," that too may be addressed by the court. *Id.*

The DOJ's demand for an unredacted copy of Colorado's SVRL easily satisfied these requirements. In its May 12 Letter, the Department identified as its basis for seeking the election records that it had received "a complaint alleging noncompliance by [Secretary Griswold] with the duties outlined in 52 U.S.C. § 20507." ECF 5-1 at 2. Under any reasonable interpretation of this letter, the basis and the purpose for the DOJ's written demand was clear, and the Attorney

General's demand put Secretary Griswold on "reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226.

### C. The DOJ's stated purpose of ascertaining Colorado's compliance with the NVRA was sufficient.

Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), including "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). "[A] court engaged in the task of statutory interpretation must examine the statute as a whole, giving due weight to design, structure, and purpose as well as to aggregate language." *Cablevision of Bos., Inc. v. Public Improvement Comm'n*, 184 F.3d 88, 101 (1st Cir. 1999) (citation omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely . . . ." *Dean v. United States,* 556 U.S. 568, 573 (2009) (alteration in original; citation omitted).

Here, Common Cause attempts three sleights of hand to evade Title III's clear meaning and the Attorney General's clear statements in the May 12 Letter. First, Common Cause attempts to engraft the word "sufficient" into the statutory requirement of a statement of the basis and the purpose. ECF 85 at 6–10. As said, nothing in Title III provides any standard against which the court can weigh the Attorney General's statement of the basis and the purpose. Second, Common Cause makes the conclusory argument that Colorado's voter registration *procedures* establish that its SVRL complies with HAVA, and therefore examination of the SVRL is unnecessary. ECF 85 at 7–8. This argument is unmoored from Title III's text or logic. Only the Attorney General's comparison of a voter's numeric HAVA identifiers with other databases that use those identifiers can determine whether a voter is ineligible to vote because, for instance, the voter died five years

ago. Third, the argument is unmoored from the facts because, despite the Attorney General's demand, Secretary Griswold refused to produce the very written procedures Common Cause relies on for its argument.

Common Cause also asserts that the Attorney General's Title III demand for records must be related to protection of the right to vote, noting that the CRA was enacted at a time when the right to vote was denied on account of race. ECF 85 at 5, 14–15. However, language limiting Title III to race-related violations of individuals' voting rights does not appear anywhere in its text. *See* 52 U.S.C. §§ 20701–20706. By contrast, elsewhere in the CRA, Congress made clear that it intended a remedy to be limited to cases involving racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account of race or color") (codified at 52 U.S.C. § 10101). Indeed, the text of Title III provides no limitation on the permissible purpose of the Attorney General's demand. Rather, it is sufficient that the Attorney General is "investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868. In any event, by broadly authorizing the Attorney General to demand election records from States, "[t]he CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026), *aff'd*, 2026 WL 1815425 (6th Cir. June 24, 2026). The NVRA was passed based in part on Congress's finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). HAVA, for its part, is a federal statute aimed at protecting voting rights. The statute "establish[es] minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666

(2002) (preamble). The Supreme Court has recognized that invalid votes—which NVRA and HAVA procedures seek to reduce if not eliminate—can "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). In practical effect, in a two-party system, an invalid vote for one candidate cancels a valid vote for the opposing candidate, and thus it denies voting rights just as surely as the exclusion of a valid voter from the registration list would deny voting rights. Because both the NVRA and the HAVA are federal election laws that protect voting rights, "the DOJ may use the CRA to investigate possible violations of" either statute. *See Benson*, 819 F. Supp. 3d at 767.

**D. The United States is Entitled to Unredacted Records.**

Common Cause asserts that if the United States is entitled to any records at all, Secretary Griswold must only produce what is publicly available since courts have read into the NVRA an ability for the states to redact information. ECF 85 at 11–18. This argument is again unmoored from Title III's text. *See United States v. Kirby*, 74 U.S. 482, 486 (1869) ("All laws should receive a sensible construction" "so . . . as not to lead to injustice, oppression, or an absurd consequence."). Title III contains a privacy provision, *see* 52 U.S.C. § 20704, that details how any information the Attorney General obtains must be protected, treated, and who that information may be shared with, and it prohibits public disclosure. *Id.* This privacy provision would be surplusage if the Attorney General were only entitled to demand publicly available data. Importantly, only the Attorney General may demand the production of election records. 52 U.S.C. § 20703. This power is not conferred on members of the general public. *Id.* Common Cause cites no case specifically holding that a state, much less anyone else, can produce redacted documents to the Attorney General, and the DOJ is unaware of any court sustaining the production of redacted government records from a state to the federal

government.

In contrast to Title III, the NVRA requires a covered state to "make available for *public* inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). Because of the privacy concerns associated with this broad public right of inspection, courts have read into this provision an option for States to redact "uniquely or highly sensitive personal information." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

Finally, Common Cause argues that the Attorney General's demand for Colorado's SVRL does not relate to list maintenance under the NVRA and HAVA but rather is a pretext for establishing a national voter database. *See* ECF 85 at 1, 15, 17. As already discussed, Title III leaves a court no room to second-guess the stated basis and purpose for the Attorney General's demand. And even if the demand were judicially reviewable, which it is not, this Court should reject Common Cause's speculative assertions.

## II. The DOJ's demand for an electronic, unredacted copy of Colorado's SVRL does not violate federal or state privacy laws.

### A. The DOJ's demand complied with the Privacy Act.

The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896). It prohibits a federal agency from "maintain[ing a] record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute . . . or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Enforcing the NVRA's and HAVA's list-maintenance requirements

satisfies the law-enforcement exception to the Privacy Act. *See* 52 U.S.C. §§ 20510, 21111 (giving the Attorney General enforcement authority over the NVRA and HAVA). The full list of routine uses for the DOJ's collection of voter information can be found in the SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904 (July 29, 2005); and 82 Fed. Reg. 24147 (May 25, 2017). The SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. The cited regulations, in turn, make clear that the Civil Rights Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a). Accordingly, the SORN covers, as routine uses of voter information, enforcement of the NVRA, HAVA, and the CRA.[2]

**B. Federal law preempts any contrary Colorado privacy law.**

The crux of this litigation is whether a state can, through the passage of a state law or otherwise, impede a federal investigation into the election practices of that state. The answer is emphatically no. In the early 1960s, local election officials in Alabama, Mississippi, and other states would have been happy to avoid all accountability merely by citing state privacy law, but Congress explicitly enacted Title III to prevent state and local officials from obstructing federal investigations. Notwithstanding a State's broad constitutional authority over the conduct of federal elections, Congress has the power to override state choices. U.S. Const. Art. I, § 4, Cl. 1. The

[2] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited July 23, 2026).

Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879) (brackets in original)); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7–9 & n.1 (2013) (discussing the breadth of the Elections Clause).

Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on demand, to produce registration records pertaining to federal elections. *Lynd*, 306 F.2d at 226. Title III, moreover, imposes its own privacy protections for records and papers demanded under Section 20703. *See* 52 U.S.C. § 20704. Only the United States, through the Attorney General, is authorized to compel records under Title III. *See* 52 U.S.C. §§ 20703, 20705. To the extent that state law prohibits Colorado from complying with the DOJ's demands, that state law must yield. *See* U.S. Const. Art. VI, Cl. 1; *see also Inter Tribal Council*, 570 U.S. at 15 ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'") (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

## CONCLUSION

Wherefore, this honorable Court should deny Defendants' Motions to Dismiss and grant the United States' Motion to Compel and such other relief as the Court deems proper.

[Signatures next page]

Dated: July 24, 2026

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General

ERIC V. NEFF
Acting Chief, Voting Section

/s/ *Jonathon P. Hauenschild*
Jonathon P. Hauenschild
Trial Attorney
Civil Rights Division
U.S. Department of Justice
150 M Street NE, 8th Floor
Washington, D.C. 20002
(202) 215-2110
jonathon.hauenschild@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,
Plaintiff
v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,
Defendant,

**REPLY IN SUPPORT OF MOTION TO DISMISS OF COMMON CAUSE, KYLE GIDDINGS, AND ANNE KEKE [DKT. NO. 85]**

## INTRODUCTION

Courts across the country have rejected the United States' attempts to compel production of statewide voter registration lists, along with all the sensitive information they contain. These courts have seen through the attempts to contort civil rights law, including Title III of the Civil Rights Act ("Title III" or "CRA"), the National Voter Registration Act ("NVRA"), and the Help America Vote Act ("HAVA"), to do so. In its opposition, the United States fails to contend with the mountain of case law (available to it prior to its opposition filing) that demonstrates this suit should be dismissed.

Illustrating the multiple, independent flaws in the United States' requests, these courts have relied on different grounds in dismissing its complaints, which were materially identical to the Complaint here. Some have found that it seeks records outside the scope of Title III, because state voter files are not records that "come into . . . [the] possession"

of elections officials.[1] Others have found that the Department of Justice (DOJ) has not provided a sufficient statement of the basis for its request, as required by the CRA.[2] Still others have held that the DOJ has not provided a sufficient statement of the purpose of its request, also required by the CRA.[3]

## ARGUMENT

### I. THE UNITED STATES' COMPLAINT IS GOVERNED BY THE FEDERAL RULES OF CIVIL PROCEDURE.

The United States uses its opposition to the motion to dismiss to rehash many of the same arguments from its motion to compel, asserting, based primarily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and other non-binding cases from more than half a

[1] *See United States v. Benson*, 179 F.4th 470, 478-79 (6th Cir. 2026); *United States v. Adams*, No. 26-cv-0019, 2026 WL 2123871, at *4-5 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 26-cv-21, 2026 WL 2070437, at *3 (D. Conn. July 17, 2026); *United States v. Oliver*, No. 25-cv-01193, 2026 WL 2031479, at *8 (D.N.M. July 14, 2026); *United States v. Koski*, No. 26-cv-42, 2026 WL 2032532, at *7-11 (E.D. Va. July 14, 2026); *United States v. Bd. of Elections of the State of N.Y.*, No. 25-cv-1338, 2026 WL 1999921, at *8-11 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054, at *4-6 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:25-cv-01481, 2026 WL 1850016, at *2 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. 25-cv-3934, 2026 WL 1780586, at *4-5 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354, at *4-5 (W.D. Wis. May 21, 2026) ("WEC"); *United States v. Bellows*, No. 25-cv-468, 2026 WL 1430481, at *6 (D. Me. May 21, 2026); *United States v. Fontes*, No. 26-cv-66, 2026 WL 1177244, at *5 (D. Ariz. Apr. 28, 2026).

[2] *See Benson*, 179 F.4th at 483; *Adams*, 2026 WL 2123871, at *5-6; *Oliver*, 2026 WL 2031479, at *9-10; *United States v. Warner*, No. 26-cv-156, 2026 WL 2018877, at *4-5 (D.W.V. July 13, 2026); *Scanlan*, 2026 WL 1864054, at *6-8; Schmidt, 2026 WL 1850016, at *2-3; *United States v. Amore*, No. 25-cv-639, 2026 WL 1040637, at *5 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, No. 25-cv-13816, 2026 WL 972129, at *4 (D. Mass. Apr. 9, 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092, 1103-04 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168, 1184-85 (C.D. Cal. 2026).

[3] *See Warner*, 2026 WL 2018877, at *5-7; *Schmidt*, 2026 WL 1850016, at *2; *Amore*, 2026 WL 1040637, at *5; *Bellows*, 2026 WL 1430481, at *7; *Oregon*, 828 F. Supp. 3d at 1104-05; *Weber*, 816 F. Supp. 3d at 1184-85.

century ago in a radically different context, that it is entitled to summary disposition without meaningful judicial review. *See* Dkt. No. 98 (Opp'n) at 4-7. This argument is contradicted by the text and structure of the CRA, binding caselaw, and the Federal Rules themselves.

It tries to distinguish *United States v. Powell*, 379 U.S. 48 (1964), by insisting that the Internal Revenue Code specified a process that the CRA does not. Opp'n at 6-7. Not so. Rather, *Powell* held that the Federal Rules apply because the statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." 379 U.S. at 58 n.18. And the relevant language invoking the district court's jurisdiction is materially identical between the law at issue in *Powell* (26 U.S.C. § 7604(a)) and the CRA's jurisdictional provisions (52 U.S.C. § 20705). The United States points to a different provision of the Internal Revenue Code that contains a provision protecting taxpayers from summonses "issued for an improper purpose." Opp'n at 7. Reliance on this language to escape the Federal Rules misreads *Powell*; that was not the relevant statutory text that compelled the conclusion that the Federal Rules apply, as is evident from the face of the decision. *Powell*, 379 U.S. at 58 n.18; *accord N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407 (1960) ("[Absent] express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law."). Moreover, the CRA does include limiting language, including the language limiting the scope of Title III to records that "come into [election officials'] possession" and the requirement for a written "statement of the basis and the purpose therefor." 52 U.S.C. §§ 20701, 20703. Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from ordinary judicial review. *Id.* § 20703.

The government notes that *Donaldson v. United States* says that "*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." Opp'n at 7 (quoting 400 U.S. 517, 529 (1971)). *Donaldson* also states, however, that "[t]he [Federal] Civil Rules, of course, do have an application to a summons proceeding," 400 U.S. at 528, which is contrary to what the United States argues, Opp'n at 7. *Donaldson* indicates—as with any case governed by the Federal Rules—district courts retain the ability to tailor and streamline a case's procedural path, including by limiting the scope of any necessary discovery, provided that core protections, such as scrutiny under Rule 12, are observed. *See* 400 U.S. at 528-29. Here, the United States demands summary disposition and the transfer of voters' sensitive data, without any substantive review; this fails to ensure the "rights of the party summoned" are "protected." *Id*. at 529.

The United States' attempt to liken a CRA request to a grand jury is not supported by any case law, including that which it cites. Opp'n at 5. And a grand jury, while an investigative tool of government lawyers, "operates under the auspices of the District Court," which includes the authority of the court to quash grand jury subpoenas. *See Fulton Cnty. Bd. of Registration & Elections v. United States*, No. 26-cv-02777, 2026 WL 1959461, at *2 (N.D. Ga. July 7, 2026) (also noting that this investigative authority "does not give the DOJ the right to use the Grand Jury to do whatever the DOJ wants"). As such, this ill-fitting analogy does nothing to allow the United States to evade judicial review.

Finally, the United States chose to initiate this action by availing itself of standard procedural pathways in filing the Complaint. As other courts hearing these cases have

noted, even if more summary procedures could otherwise apply, "Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation," thereby subjecting its complaint to ordinary scrutiny under Rule 12. *Oregon*, 828 F. Supp. 3d at 1102, n.1; *Amore*, 2026 WL 1040637, at *4 n.1.

## II. THE UNITED STATES FAILED TO COMPLY WITH THE CRA'S STATUTORY REQUIREMENTS.

The United States would reduce the protections in Title III to a dead letter. In its telling, the Attorney General could make a demand for records entirely unmoored from the statutory scheme and from actual facts in the world, and a co-equal branch of the government could do nothing but rubber-stamp that request.

### A. Title III Does Not Cover the Requested Records Because They Do Not Come Into the Secretary's Possession.

As a threshold matter, Colorado's statewide voter registration list (SVRL) falls outside the scope of Title III. Title III only obligates elections officials to preserve those "records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. It also grants the Attorney General the power only to demand "[a]ny record or paper required by [§ 20701] to be retained and preserved." *Id.* § 20703. This plain text forecloses the United States' request: Colorado's SVRL is not a record which "c[a]me into [the] possession" of elections officials, including the Secretary, because it is one they created. *See supra* n.1.[4]

[4] These cases were all decided after the Common Cause Intervenors filed their original motion to dismiss on December 19, 2025, but were all decided before the United States' filing of its opposition.

**B. The United States Offered Neither a Sufficient Basis nor Purpose.**

To begin, in its actual request for the SVRL, the DOJ offered no statement of the basis or purpose whatsoever. Dkt. No. 5-1 at Ex. 2. As such, it has failed to even begin to comply with the statutory requirements of the CRA. While the United States arguably invoked the CRA in its letter to Colorado in May 2025, that letter made no reference whatsoever to the SVRL. Dkt. No. 5-1 at Ex. 1. And the SVRL is not a record "outlined in 52 U.S.C. § 20701," *id.*, which is what was requested in that letter. *See supra* II.A; *e.g.*, *Benson*, 179 F.4th at 478-79. This conclusion is further bolstered by the May 2025 letter itself, which required a "certification that no record required for preservation has been deleted, destroyed, or altered from its original format." Dkt. No. 5-1 at Ex. 1. But the SVRL is a document that must be continually updated, and so the Secretary could not have certified that it had not been altered. *See, e.g.*, *Benson*, 179 F.4th at 479-80.

The CRA mandates that the Attorney General provide a written statement of "the basis and the purpose" underlying the records request. By twice using the definite article, the statute requires not just a basis or purpose among many, or a possible basis or purpose, but the actual basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165-66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and indefinite article). The United States' argument that it has complied with the statutory requirements rests entirely on out-of-Circuit, non-binding caselaw from the 1960s. Applying *Lynd* in such a manner would utterly neuter judicial review and make the executive branch paramount over its co-equal branches of government. The CRA should

not be so interpreted.

The basis requirement requires an express statement of the actual factual circumstances prompting the DOJ's request. "To invoke all (or virtually all) investigatory tools and compulsory process, the law requires some showing," even if that showing is "typically less than the showing required to prevail on the related claim." *Galvin*, 2026 WL 972129, at *6. The United States would have it that any assertion of a supposed complaint supplies a sufficient basis to require a state to turn over its records to the federal government. But a solitary reference to an anonymous and seemingly uncorroborated complaint about NVRA compliance—without any further specific or factual details—is insufficient to constitute the "support," "foundation," or "[f]undamental principle" underlying the demand. *Id.* at *3 (quoting multiple dictionaries). While Title III does not require DOJ to prove a violation, it does require some statement of the specific factual basis underlying its demand, or else it would "essentially authorize[] factually groundless fishing expeditions." *Amore*, 2026 WL 1040637, at *5; *see also Bellows*, 2026 WL 1430481, at *9 ("[T]he United States has filed a HAVA action in search of a HAVA violation, which is not the preferred order of things in the course of civil litigation.").

Even if this vague, solitary reference to "a complaint" by some anonymous individual was somehow sufficient to constitute a basis, the May 2025 letter does not contain a demand for the SVRL under Title III. Dkt. No. 5-1 at Ex. 1. Only the December 1 email makes an express demand for Colorado's unredacted SVRL. *Id.* at Ex. 2. And this email contains no factual basis (or purported purpose) for the demand at all. As multiple courts have held, the plain text of Title III—requiring a "demand in writing" that "shall

contain a statement of the basis and the purpose therefor”—requires that a single “demand must contain both” the basis and the purpose. *Benson*, 179 F.4th at 483; *see also Oregon*, 828 F. Supp. 3d at 1104 (rejecting the DOJ’s “post hoc effort to stitch together a legally sufficient ‘statement of the basis’" by combining two letters).

And beyond the failure to state both the basis and purpose in the same writing as the request for the voter file, the demand further fails because on its face, the purpose is inadequate, because “each individual state, and not the U.S. Department of Justice, is the master of its voter list, entrusted with its administration and maintenance.” *Bellows*, 2026 WL 1430481, at *7. The NVRA, which was cited in the May 2025 letter, does not displace states’ primary authority over their voter lists; it obligates them only to engage in a “reasonable effort” at list maintenance. *See* Dkt. No. 85 (MTD Br.) at 10. The DOJ attempts to go much further than Congress has authorized, by performing list maintenance itself in the guise of assessing compliance with federal law. In the Memorandum of Understanding it offered Colorado on December 1, *see* Compl. ¶ 24, the DOJ would be a “[c]ustodian” of the state’s voter file and could identify purportedly ineligible voters for removal, *see* Dkt. No. 17-2 (MOU offered to Colorado). But federal list maintenance statutes “do not contemplate production of the unredacted computerized list to the Attorney General so that he might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list.” *Bellows*, 2026 WL 1430481, at *8. Far from simply monitoring NVRA compliance, it is a hostile takeover of the state’s responsibilities under that law. “[W]hatever investigatory purposes may support a Title III records demand, voter list maintenance is not among them.” *Id*. at *7.

At the end of the day, discussion of investigating list maintenance is beside the point, because it is not the actual purpose motivating the request. Title III requires that the DOJ provide a statement of "*the* basis and *the* purpose," rather than just some conceivable basis and purpose. 52 U.S.C. § 20703 (emphasis added). It is evident from the federal government's own activities that investigating a single anonymous complaint against Colorado is not the true purpose of its request. If it were, it would not be seeking the state voter files of all the states and suing 31 states so far to get them. Judicially-noticeable materials, including DOJ's own filings and public statements, shed light on its actual plans. *See* MTD Br. at 3-4, 15, 17; *see also Bellows*, 2026 WL 1430481, at *3 n.6 (noting that the United States' "efforts to assuage . . . concerns" about creation of a national voter database "were almost immediately undermined" by a recent executive order "directing the Department of Homeland Security to compile a 'State Citizenship List' in order to 'assist in verifying identity and Federal election voter eligibility'"). Indeed, in acknowledging the asserted purpose of establishing a national voter database, the United States never denied the facts underlying this assertion. *See* Opp'n at 12.

## III. VOTERS' CONSTITUTIONAL RIGHTS REQUIRE REDACTION, SO THE REQUESTED RELIEF FAILS.

The United States misapprehends why, even if it had met all of the statutory requirements necessary for disclosure of certain records under the CRA—which it has not—it would still not be entitled to its requested relief. It is not the different statutory language of the NVRA that compels redaction, Opp'n at 12; it is the constitutional rights of voters, which cannot be overridden by statute. As the Tenth Circuit recently recognized, statutes providing for disclosure of voter registration records permit redaction of sensitive

voter information, even without express authorization. *See Voter Reference Found. v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *see also Bellows*, 2026 WL 1430481, at *5 & n.7 (noting the similarity between the NVRA and Title III and applying Circuit caselaw allowing "the redaction of uniquely or highly sensitive personal information in records subject to disclosure" (internal quotation marks omitted)). Redaction is necessary to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). Because the United States insists on receiving an *unredacted* voter file, its requested relief would invade the constitutional rights of Colorado voters and is thus not relief this Court can offer.

## CONCLUSION

The Court should dismiss the United States' Complaint.

Dated: July 31, 2026 Respectfully submitted,

/s/ Theresa J. Lee

Theresa J. Lee
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

Patricia J. Yan
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

Timothy R. Macdonald, Bar No. 29180
Sara Neel, Bar No. 36904
American Civil Liberties Union of Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
(303) 777-5482
tmacdonald@aclu-co.org
sneel@aclu-co.org

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record.

/s/ Theresa J. Lee

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,

Defendant.

---

**ORDER**

---

This matter comes before the Court on the United States' Motion for Order to Compel Records Demanded Pursuant to the Civil Rights Act of 1960 [Docket No. 2], defendant Colorado Secretary of State Jena Griswold's Motion to Dismiss [Docket No. 40] pursuant to Fed. R. Civ. P. 12(b)(6), Intervenors Common Cause, Kyle Giddings, and Anne Keke's Motion to Dismiss [Docket No. 85], and Intervenors Colorado Alliance for Retired Americans and Britton DeFord's Motion to Dismiss [Docket No. 86].[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. LEGAL BACKGROUND

Title III of the Civil Rights Act (the "CRA") provides that:

[1] On June 8, 2026, the magistrate judge granted the motions to intervene of Common Cause, Kyle Giddings, and Anne Keke (the "Common Cause Intervenors") and Colorado Alliance for Retired Americans and Britton DeFord (the "Alliance Intervenors"). Docket No. 84 at 13-14. On July 10, 2026, the Court granted the Alliance Intervenors leave to file a supplemental brief in support of their motion to dismiss. *See* Docket Nos. 89, 94.

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

52 U.S.C. § 20701. Section 20703, which provides a mechanism for the Attorney General to obtain the records and papers described in § 20701, states as follows:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703.

States must maintain a statewide voter registration list ("SVRL") in accordance with the Help America Vote Act ("HAVA") and National Voter Registration Act ("NVRA"). *See* 52 U.S.C. §§ 21083, 20507. Colorado's SVRL is stored in a database known as SCORE. Docket No. 37-10 at 1, ¶ 2. SCORE is "constantly updated" as each county clerk and recorder, upon receiving new information regarding a voter, uploads voter information in SCORE. *Id.*, ¶ 3. For instance, SCORE is updated when a voter moves and is updated to remove deceased voters. *See id.* at 2, 3, ¶¶ 3, 8. Colorado's Department of State makes available a public version of Colorado's SVRL that excludes

a voter's driver's license number, the last four digits of his or her social security number, and the voter's full date of birth. *Id.* at 3, ¶ 11. The public version includes the voter's HAVA identifier, Voter ID, name, address, and birth year. *Id.* The public version also includes information about the voter's party registration. *Id.* The public can request a version of the SVRL that includes voting history. *Id.* Under Colo. Rev. Stat. § 24-72-204(3.5)(b), voters may request that their information be withheld from the public version of the SVRL if inclusion on the public list would expose the voter or his or her immediate family to criminal harassment or bodily harm. *Id.*, ¶ 12.

## II. FACTUAL BACKGROUND[2]

The Attorney General received a complaint alleging that defendant Jena Griswold ("the Secretary") is failing to comply with 52 U.S.C. § 20507. Docket No. 1 at 5, ¶ 19. On May 12, 2025, the Attorney General sent the Secretary a letter (the "May 12 Letter"), "seeking information regarding Colorado's compliance with federal election law." *Id.*, ¶ 20. The May 12 Letter requested (a) a copy of the records identified in § 20701 and a certification that no record required for preservation has been deleted, destroyed, or altered from its original form, *id.*, ¶ 21; (b) that the Secretary provide "all statutes, regulations, written guidance, internal policies, or database user manuals that set out the procedures Colorado has put in place relating to implementing the requirements of 52 U.S.C. § 20701," *id.*; and (c) that the information be provided within 14 days. *Id.*, ¶ 22. On May 27, 2025, the Secretary responded to the May 12 Letter, providing information from the public version of the SVRL and an addendum with the

[2] The well-pled facts taken from the United States' complaint, Docket No. 1, are presumed true for the purpose of ruling on the Secretary's motion to dismiss.

relevant statutes and regulations. *See* Docket No. 37-10 at 3, ¶ 14; Docket No. 37-3 at 2-3. The Secretary did not provide information from the nonpublic version of the SVLR, which includes a voter's driver's license number, the last four digits of his or her social security number, and the voter's full date of birth. Docket No. 37-3 at 2-3; Docket No. 37-10 at 3, ¶ 11.[3]

On December 1, 2025, the United States sent a follow-up email to the Secretary requesting Colorado's SVRL. Docket No. 1 at 5-6, ¶ 24. The email read:

> The United States is prepared at this early stage to enter into an MOU with the State of Colorado regarding the sharing of the nonpublic, unredacted voter registration list. I have attached that MOU, which we believe cures all potential concerns a state might rightfully raise regarding its citizens' private data and identifying information.

*Id.* On December 3, 2025, the Secretary responded, "We received your request. We will not be producing unredacted voter files or signing the MOU." *Id.* at 6, ¶ 25.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the

[3] The United States does not dispute that the Secretary responded and provided information that was responsive to all of its requests, except for the request for nonpublic SVRL information. *See* Docket No. 49 at 7 n.2.

statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## IV. ANALYSIS

The United States brings a single claim alleging that the Secretary violated 52 U.S.C. § 20703 by failing to produce the records requested by the United States. *See* Docket No. 1 at 6, ¶¶ 26-28. The United States also filed a motion to compel these records pursuant to § 20701. *See* Docket No. 2 at 1. The United States requests a

copy of the SVRL that includes each registrant's name, date of birth, address, the last four digits of the registrant's social security number, and driver's license number, state identification number, or HAVA identifier. *See id.* at 2-3.

### A. Whether the Federal Rules of Civil Procedure Apply

The United States relies on *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962), for the proposition that the Federal Rules of Civil Procedure do not govern this case or apply to the Secretary's Rule 12(b)(6) motion to dismiss. Docket No. 49 at 9-11. Furthermore, the United States contends that the Secretary may not, through her motion, question the Attorney General's basis and purpose for his request under Title III. *See id.* at 21. In *Lynd*, the Fifth Circuit held that the Attorney General demanding records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Thus, *Lynd* held that a Title III action "is a special statutory proceeding" that "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *See id.* at 225-26. *Lynd* further held that, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's statement of the basis and the purpose therefor as set forth in the written demand." *Id.* at 226 (internal quotation and citation omitted).

The Court agrees with other courts to have considered the issue that the statutory text of Title III demonstrates that the Court has the authority to determine whether the Attorney General has complied with the statutory requirements to compel the production of records described in § 20701. In *United States v. Weber*, 816 F.

Supp. 3d 1168, 1182 (C.D. Cal. 2026), the court found that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." Similarly, in *United States v. Oregon*, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026), the court found that *Lynd* did not prevent the court from considering the Oregon Secretary of State's motion to dismiss and that "the starting point is the relevant language of Title III." *See also United States* v. *Jared DeMarinis*, 2026 WL 1780586, at *3 (D. Md. June 18, 2026) ("Nothing in the CRA or this Court'[s] Local Rules provides that the Federal Rules of Civil Procedure do not apply to these proceedings, and this Court has entered no such order.").

The CRA says nothing suggesting the inapplicability of the Federal Rules of Civil Procedure. Under § 20705,

> The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.

52 U.S.C. § 20705. In *United States v. Powell*, 379 U.S. 48, 51 (1964), the Supreme Court considered an enforcement proceeding brought by the government pursuant to 26 U.S.C. § 7604(a), which governs the enforcement of summons issued by the Internal Revenue Service. Like § 20705, § 7604(a) affords the United States district court "jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data." 26 U.S.C. § 7604(a). *Powell* held that, "[b]ecause s 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Powell*, 379 U.S. at 58 n.18. Similarly, here, there is no provision that specifies the procedure to be followed and therefore the Federal Rules of Civil Procedure apply. "The Federal

Rules are the default rules in civil litigation" and, while "Congress may override that command when it wishes," courts do not "lightly infer that Congress has done so; and silence on the subject is seldom enough." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023). Accordingly, the Court finds that the Federal Rules of Civil Procedure govern and the Court can "evaluat[e] the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether – applying Rule 12(b)(6) standards – a valid Title III demand was made in the first place." *See Oregon*, 2026 WL 318402, at *8.

### B. <u>Whether the United States Requests Records Covered by Title III of the CRA</u>

The Secretary moves to dismiss the United States' complaint pursuant to Rule 12(b)(6), arguing that the United States fails to allege a plausible claim for relief under § 20703 because (1) the nonpublic SVRL requested by the United States does not constitute a record under Title III of the CRA; (2) the United States does not plausibly allege a sufficient basis and valid purpose for its request; and (3) only in-person inspection of covered records is permitted under § 20703. *See* Docket No. 40 at 9. The Common Cause Intervenors argue that the United States' demand exceeds the statutory authority granted by the CRA, any records disclosed under the CRA should be redacted, and that the Federal Rules of Civil Procedure govern and the United States is therefore not entitled to a summary disposition of this case. *See* Docket No. 85 at 5-18. The Alliance Intervenors also argue that the United States has not asserted a proper basis and purpose for its demand, Title III does not prohibit the redaction of sensitive voter information, and that the United States failed to comply with the Privacy Act. *See* Docket No. 86 at 5-15.

The United States responds that (a) the United States' purpose in requesting records under § 20703 need not be related to investigating race-based denial of voting rights and the Secretary cannot challenge the Attorney General's basis and purpose for requesting records, Docket No. 49 at 14-22; (b) Colorado's SVRL constitutes a record under § 20701, *id.* at 22-28; and (c) the United States is entitled to all information in the SVRL, notwithstanding Colo. Rev. Stat. § 24-72-204. *Id.* at 28-31. In response to the Common Cause Intervenors,[4] the United States also contends that Title III requires the Secretary to comply with its demand and that the demand does not violate federal or state privacy laws. *See* Docket No. 98 at 4-14.

The demand that the United States seeks to enforce is the December 1 demand for information from the nonpublic SVRL. As articulated in the December 1 email, the United States seeks records listing each voter's name, date of birth, address, last four digits of the voter's social security number, and driver's license number, state identification number, or HAVA identifier. *See* Docket No. 1 at 5-6, ¶ 24; Docket No. 2 at 2-3.

Pursuant to 52 U.S.C. § 20703, the demand submitted by the Attorney General "shall contain a statement of the basis and the purpose" for the demand. The December 1 email does not state a basis and purpose for demanding a "nonpublic, unredacted voter registration list," but rather states that it is a "follow up from original correspondence that began in May." *See* Docket No. 5-1 at 5. The May 12 Letter did not include a demand for the nonpublic SVRL. *See* Docket No. 1 at 5; Docket No. 5-1

[4] The United States filed a response to Common Cause Intervenors' motion to dismiss, Docket No. 98, but not the Alliance Intervenors' motion to dismiss.

at 2-3. Therefore, the December 1 email failed to provide a sufficient basis and purpose for requesting the nonpublic SVRL. *See Oregon*, 2026 WL 318402, at *9 (rejecting plaintiff's "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis'" between two separate letters sent to defendant). Even if the United States did provide a proper purpose and basis under § 20703 in the December 1 email, the Court, for reasons discussed below, finds that the nonpublic SVRL is not a record as contemplated under §§ 20701 and 20703.

A demand made under § 20703 applies to "[a]ny record or paper required by section 20701." 52 U.S.C. § 20703. Section 20701, in turn, covers "all records and papers which come into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election."

In cases where the United States has sought SVRLs pursuant to § 20703, courts have found that "a voter registration list is not a record subject to retention and preservation under § 20701." *See United States v. Wis. Elections Comm'n*, --- F. Supp 3d ----, 2026 WL 1430354, at *3 (W.D. Wis. May 21, 2026); *see, e.g., United States v. Benson*, 819 F. Supp. 3d 753, 768 (W.D. Mich. 2026) (agreeing that § 20701 "refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials"); *United States v. Bellows*, --- F. Supp 3d ----, 2026 WL 1430481, at *6 (D. Me. May 21, 2026) ("Title III's commands therefore pertain to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to

vote are registered."); *United States v. Fontes*, --- F. Supp 3d ----, 2026 WL 1177244, at *5 (D. Ariz. Apr. 28, 2026) ("based on the plain meaning of the text of § 20701, Arizona's SVRL is not a document subject to request by the Attorney General pursuant to § 20703"); *DeMarinis*, 2026 WL 1780586, at *5 ("Accordingly, this Court joins every court to have addressed this issue in concluding that an SVRL is not a record or paper that a state must produce to the United States under the CRA."); *United States of American v. Bd. OF Elections of the State of N.Y.*, 2026 WL 1999921, at *8 (N.D.N.Y. July 10, 2026) ("Plaintiff's CRA claim fails at the outset for an even more fundamental reason – the Attorney General is simply not entitled to the NYSVoter List under Title III. This conclusion is supported by six recent district court decisions which have determined that voter registration lists are not records subject to retention and preservation under § 20701."); *United States v. Koski,* 2026 WL 2032532, at *4 (E.D. Va. July 14, 2026) ("corresponding with a growing group of federal courts in analogous suits, this Court holds that Virginia's SVRL is not a record subject to production under Title III of the CRA").

Section 20701 covers records and papers "which come into [the state's] possession," *see* 52 U.S.C. § 20701, referring "to a process by which someone *acquires* an item from an external source." *See Benson*, 819 F. Supp. 3d at 768. Section 20701 applies to those documents that "election officials *receive*, rather than *create*," specifying that such documents must relate to "any application, registration, payment of poll tax, or other act requisite to voting in such election." *Id.* at 768-69 (citing 52 U.S.C. § 20701). These are terms that "refer[] to something that the voter submits or does as part of the registration process." *Id.* If Section 20701 also covered records created by

the state, then the phrase "come into [the state's] possession" would be superfluous. *See Fontes*, 2026 WL 1177244, at *2 ("if § 20701 was intended to encompass records created by the state, that meaning could have been achieved by omitting the phrase altogether"); *Green Tree Acceptance, Inc. v. Wyo. Nat'l Bank*, 1 F.3d 1249, 5 (10th Cir. 1993) ("statutes should be construed to avoid making any word superfluous").

Furthermore, if § 20701's definition of records includes Colorado's SVRL, then § 20701 would be in conflict with other statutes that regulate the maintenance of voter registration records. The NVRA and HAVA require "an SVRL's constant alteration" to ensure that the SVRL contains accurate voter information. *See DeMarinis,* 2026 WL 1780586, at *5; 52 U.S.C. §§ 20501(b)(4), 20507(a)(4), 21083(a)(1)(A). Section § 20702 criminalizes the alteration of "any record or paper required by section 20701 of this title to be retained and preserved." *See* 52 U.S.C. § 20702. If the Court were to adopt the United States' proposed definition of "record or paper," the Secretary would violate 52 U.S.C. § 20702 each time she updated the SVRL to comply with the NVRA and HAVA. *See DeMarinis,* 2026 WL 1780586, at *5 ("The United States's proposed interpretation of the CRA would therefore criminalize the same conduct that the NVRA and HAVA require. This Court will not read § 20701 to produce such an absurd result.").

The authorities cited by the United States do not support its position. *See* Docket No. 49 at 22-24. For instance, in *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438 (D. Md. 2019), the court considered whether a voter registration list is a record under Section 8(i) of the NVRA, not § 20701. In *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 851 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d

430 (5th Cir. 1961), plaintiff requested "production of all records and papers in [defendants'] possession or under their control relating to any application, registration, payment of poll tax, or other act requisite to voting." Thus, the plaintiff in *Gallion* requested records unequivocally covered under § 20701 and the court did not reach the question of whether voter rolls would constitute records or papers under the statute.

In order to state a claim for violation of § 20703, the United States must allege that it requested a "record or paper required by section 20701." 52 U.S.C. § 20703. Because the Court finds that Colorado's SVRL is not a record or paper that must be produced pursuant to §§ 20701 and 20703, the United States has failed to state a claim under § 20703. Accordingly, the Court will grant the motions to dismiss of the Secretary, the Common Cause Intervenors, and the Alliance Intervenors and deny the United States' motion to compel and dismiss its claims.

## V. CONCLUSION

Therefore, it is

**ORDERED** that the United States' Motion for Order to Compel Records Demanded Pursuant to the Civil Rights Act of 1960 [Docket No. 2] is **DENIED**. It is further

**ORDERED** that Secretary of State Jena Griswold's Motion to Dismiss [Docket No. 40] is **GRANTED**. It is further

**ORDERED** that the Common Cause Intervenors' Motion to Dismiss [Docket No. 85] is **GRANTED**. It is further

**ORDERED** that the Alliance Intervenors' Motion to Dismiss [Docket No. 86] is **GRANTED**. It is further

**ORDERED** that the United States' complaint is **DISMISSED with prejudice**.[5] It is further

**ORDERED** that this case is closed.

DATED August 3, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

[5] Because Colorado's SVRL is not a record that must be produced under 52 U.S.C. § 20703, the United States fails to state a claim for relief and amending the complaint would be futile. Therefore, the Court will dismiss the complaint with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.")

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,

Defendant.

v.

COMMON CAUSE,
KYLE GIDDINGS,
ANNE KEKE,
COLORADO ALLIANCE FOR RETIRED AMERIANS, and
BRITTON DEFORD,

Intervenor-Defendants.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order [Docket No. 102] of United States District Judge Philip A. Brimmer entered on August 3, 2026, it is

ORDERED that Secretary of State Jena Griswold's Motion to Dismiss [Docket No. 40] is GRANTED. It is further

ORDERED that the Common Cause Intervenors' Motion to Dismiss [Docket No. 85] is GRANTED. It is further

ORDERED that the Alliance Intervenors' Motion to Dismiss [Docket No. 86] is GRANTED. It is further

ORDERED that the United States' complaint is DISMISSED with prejudice. It is further

ORDERED that judgment shall enter in favor of defendant and against plaintiff. It is further

ORDERED that this case is closed.

Dated: August 4, 2026.

FOR THE COURT:

Jeffrey P. Colwell, Clerk

By s/ S. Grimm
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JENA GRISWOLD, in her official capacity as Secretary of State for the State of Colorado,<br><br>Defendant. | Case No. 1:25-cv-03967-PAB-TPO |

**NOTICE OF APPEAL**

Plaintiff United States of America, by and through the Attorney General, appeals to the United States Court of Appeals for the Tenth Circuit from this Court's Order denying the United States' Motion for Order to Compel Records Demanded Pursuant to the Civil Rights Act of 1960 and granting the Motions to Dismiss by Defendant Griswold, Intervenor-Defendants Common Cause et al., and Intervenor-Defendants Colorado Alliance for Retired Americans et al. (ECF 102) and judgment (ECF 103) entered in this action on August 3, 2026, and August 4, 2026, respectively.

Dated: August 17, 2026

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC A. SELL
Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section

ANDREW G. BRANIFF
Acting Chief, Appellate Section

*/s/ James Thomas Tucker*
JAMES THOMAS TUCKER
JONATHON P. HAUENSCHILD
JOHN CASALI
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Seventh Floor
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

Respectfully submitted,

*/s/ James Thomas Tucker*
James Thomas Tucker